## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| COMMON CAUSE GEORGIA, as an organization, <br><br> *Plaintiff,* <br><br><br><br><br> v. <br><br><br> BRIAN KEMP, in his official capacity as Secretary of State of Georgia, <br><br><br> *Defendant.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Case No. 18-cv- <br> **COMPLAINT** |

## <u>INTRODUCTION</u>

1.      This is an action seeking to protect against the denial of Georgia citizens' fundamental right to vote as a result of malfeasance or tampering with Georgia's voter registration database—a threat made more acute in the last few days by the actions of Defendant. Plaintiff Common Cause Georgia, a non-partisan voter advocacy organization that is a part of Common Cause, a national organization, asks this Court to issue declaratory and injunctive relief to ensure that

1

the provisional ballots cast by affected voters are properly counted. Specifically,

Plaintiff seeks an Order requiring that provisional ballots be counted in Georgia in

a manner consistent with federal and state constitutional and statutory law.  As

there is no way to investigate in a timely manner how many voters have been

affected by the security vulnerabilities the Defendant has chosen not to address—

and in recent days exacerbated—Plaintiff respectfully submits that provisional

ballots are the only practical proxy for identifying affected voters and ensuring

they do not lose their votes as a result of Defendant's reckless conduct.

## JURISDICTION AND VENUE

2.      This case arises under the Constitution and laws of the United States

and the State of Georgia. This Court has subject matter jurisdiction over this action

pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.  This Court has jurisdiction to

grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391, because

Defendant resides in this district and a substantial part of the events or omissions

giving rise to Plaintiff's claims occurred in this district.

## PARTIES

4.      Plaintiff COMMON CAUSE GEORGIA is a chapter of Common

Cause, a non-partisan citizen lobby organized as a not-for-profit corporation under

the laws of the District of Columbia, and devoted to electoral reform, ethics in government and to the protection and preservation of the rights of all citizens to vote in national, state and local elections, including the education of voters about voting rights and procedures. Common Cause is one of the nation's leading grassroots, democracy-focused organizations and has over 1.2 million members nationwide and chapters in 30 states. Common Cause Georgia has 18,785 members and supporters in Georgia. Since its founding, Common Cause has been dedicated to the promotion and protection of the democratic process, including the right of all citizens to vote in fair, open, and honest elections. Common Cause conducts significant non-partisan voter-protection, advocacy, education, and outreach activities to ensure that voters are registered and have their ballots counted as cast. In addition, Common Cause offers online tools to assist voters in registering to vote and checking their registration status.

5.    Common Cause Georgia has increased its efforts in the areas of election protection, voter education, and grassroots mobilization around voting rights in the state. As of 2017, Common Cause Georgia, alongside its partners at New Georgia Project, Asian Americans Advancing Justice, ACLU of Georgia, and Spread the Vote, created a program to help recruit volunteers to monitor local board of elections meetings through the Peanut Gallery program. Common Cause

3

also works with these partners, and others, in election protection efforts during both midterm and presidential elections. Through its volunteer recruitment for poll monitors, Common Cause Georgia is on track to help monitor an average of five polling locations in 22 counties for a total of 110 polling places. Common Cause Georgia additionally engages in online petition drives, soliciting signatures from its members and supporters urging government officials to take certain actions. Furthermore, Common Cause Georgia participates in voter registration events. Defendant's actions with respect to the State voter registration database impact Common Cause Georgia's work, as its election protection program focuses on providing resources that enable voters to participate in the election and be educated on the questions they should ask to confirm their registration status. Common Cause Georgia now must redouble its efforts to counter this latest challenge to Georgia citizens' fundamental right to vote. As a result, Common Cause Georgia has, and will continue to have, fewer resources to devote to its other organizational activities unless the state's provisional balloting process is modified to permit qualified and duly registered voters to have their ballots counted.

6. Defendant BRIAN KEMP is the Secretary of State of Georgia and the State's chief election official.

4

## STATEMENT OF FACTS

### The Georgia My Voter Page System is Vulnerable to Attack and Threatens to Cause Confusion and Potentially Improperly Restrict Voters' Right to Vote

7.     My Voter Page, a website of the Georgia State Government, is a public interface where voters can check their voter registration status, poll locations, and view sample ballots for upcoming elections.  The registration records used at the polls to determine whether voters are eligible to vote are created from data in the My Voter Page system.

8.     As Secretary of State, Brian Kemp is responsible for the security of voter information, including information on the My Voter Page.

9.     On information and belief, My Voter Page and the state's voter registration server are vulnerable to multiple security breaches.

10.     For example, on information and belief, at least as of November 4, 2018, an individual can access My Voter Page and click on a link to get to an insecure page, which allows the individual to view any file on the My Voter Page server simply by typing the file name into the web browser.[1]  An individual can then access any document, configuration files for the network, or cryptographic

---

[1] *See* Jordan Wilkie & Timothy Pratt, *Kemp's Aggressive Gambit to Distract From Election Security Crisis*, Who. What. Why. (Nov. 4, 2018), https://whowhatwhy.org/2018/11/04/kemps-aggressive-gambit-to-distract-from-election-security-crisis/.

keys.[2]  An attacker can also take advantage of this vulnerability and download every Georgia voter's personally identifiable information and change or cancel the voter registrations and data housed on the system.[3]  It is believed that an attacker could potentially automate this process to change the registration of multiple voters at once.[4]

11.    Because voter history, absentee voting data, and early voting data are public records available on the Secretary of State's website, this publicly available information can be used to target certain demographic groups and manipulate their data and change or cancel their registrations.

12.    Not only could this eliminate an individual's ability to vote, but it also could cause significant confusion at the polls.  For example, Georgia voters have, throughout this election season, reported being assigned to the wrong precinct, being issued the wrong ballot, and not showing up in the poll books.  While it is not known how long the vulnerabilities described above have been in place or

---

[2] *Id.*
[3] *Id.*
[4] Matt Bernhard, *Serious Vulnerabilities in Georgia's Online Voter Registration System*, Medium (Nov. 4, 2018), https://medium.com/@mattbernhard/serious-vulnerabilities-in-georgias-online-voter-registration-system-cc319cbbe3d8.

whether they have been exploited in any way, these mistakes could possibly be the result of vulnerabilities being exploited to change or delete voter information.[5]

13.     On information and belief, several computer security and election system experts looked at the code underlying the My Voter Page website and concluded that voter data could be easily accessed and changed.  The My Voter Page system does not have the capability to track changes made to voter data so it is not possible to determine the extent to which voter information has been changed.[6]

### The Secretary of State Has Long Known About these Vulnerabilities and Has Politicized and Exacerbated, Rather than Remedied, Them.

14.     On information and belief, multiple parties notified both the Georgia Secretary of State and national intelligence officials of the security vulnerabilities.

15.     As early as 2015, one of Defendant's own employees sent out personally identifiable information to twelve news media and political organizations.[7]  Defendant was aware of this breach at the time, and claimed that

---

[5] Jordan Wilkie & Timothy Pratt, *Georgia's Voter Registration System Like 'Open Bank Safe Door,'* Who. What. Why. (Nov. 4, 2018), https://whowhatwhy.org/2018/11/04/exclusive-georgias-voter-registration-system-like-open-bank-safe-door/.

[6] *Id.*

[7] Jordan Wilkie & Timothy Pratt, *Kemp's Aggressive Gambit to Distract From Election Security Crisis*, Who. What. Why. (Nov. 4, 2018),

"all voter information is secure and safe."[8]  Defendant also claimed to be engaging

Ernst & Young to review the Secretary of State's information technology policies

and procedures.[9]

16.     In August 2016, on information and belief, a computer researcher

named Logan Lamb accessed the entire Georgia voter registration database and all

personally identifiable information on the database.  Lamb found that the system

was not password protected and could be rewritten.  The State was notified.[10]

17.     It was also reported in August 2016 that Defendant rejected the

federal government's efforts to assist states with election security, and said that a

hack of Georgia's voting system "is not probable at all, the way our systems are set

up."[11]

---

https://whowhatwhy.org/2018/11/04/kemps-aggressive-gambit-to-distract-from-election-security-crisis/.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] Eric Geller, *Elections security: Federal help or power grab?*, Politico (Aug. 28, 2016), https://www.politico.com/story/2016/08/election-cyber-security-georgia-227475.

18.     In February 2017, on information and belief, a security engineer named Christopher Grayson joined Lamb in finding that the problem persisted and that voter information remained unprotected.[12]

19.     These security breaches were the basis for a lawsuit filed against Defendant in 2017 by the Coalition for Good Governance.[13]

20.     Despite these continued warnings and the clear indications that Georgia's voting system was vulnerable, Defendant continued to reject federal election security assistance.[14]

21.     In the last week, the Defendant has been specifically alerted to these vulnerabilities and rather than using the resource of the State to address and fix the problems, the Defendant has instead waged a political counter attack against the Democratic Party.[15]  In so doing, he has not only failed to remedy the problem, but

---

[12] Jordan Wilkie & Timothy Pratt, *Kemp's Aggressive Gambit to Distract From Election Security Crisis*, Who. What. Why. (Nov. 4, 2018), https://whowhatwhy.org/2018/11/04/kemps-aggressive-gambit-to-distract-from-election-security-crisis/.

[13] Verified Amended Election Contest and Compliant for Declaratory Relief, Injunctive Relief, Damages, and Writs of Mandamus, *Curling* v. *Kemp*, No. 2017CV292233 (Fulton Cty. Ga. Super. Ct. Aug. 18, 2017).

[14] Johnny Kauffman, *Georgia Says No Thanks To In-Depth Election Security Help From Feds*, WABE 90.1FM (Feb. 14, 2018), https://www.wabe.org/georgia-says-no-thanks-election-security-help-feds/.

[15] Richard Fausset & Alan Blinder, *Brian Kemp's Office, Without Citing Evidence, Investigates Georgia Democrats Over Alleged 'Hack,'* New York Times (Nov. 4,

he has advertised the vulnerability of the system to those who may want to interfere with voters' exercise of their right to vote.

22.     On Saturday, November 3, 2018, on information and belief, David Cross, a lawyer at Morrison Foerster, notified John Salter, a lawyer who represents Defendant and the Secretary of State's office, of potential vulnerabilities in the Georgia election system website.[16] Cross had been contacted on Friday by a Georgia resident with concerns about the state's My Voter Page website.[17] The resident had been looking at his information on the My Voter Page site and realized that he was able to access, and not just view, files on his voter information page.[18] In addition to Salter, Cross also reached out to the FBI to inform them of this potential vulnerability.[19]

23.     On information and belief, Bruce Brown, a lawyer for the non-profit Coalition for Good Governance, also notified Defendant's lawyers of the security

---

2018), https://www.nytimes.com/2018/11/04/us/politics/georgia-elections-kemp-voters-hack.html.

[16] Jordan Wilkie & Timothy Pratt, *Kemp's Aggressive Gambit to Distract From Election Security Crisis*, Who. What. Why. (Nov. 4, 2018), https://whowhatwhy.org/2018/11/04/kemps-aggressive-gambit-to-distract-from-election-security-crisis/.

[17] *Id.*

[18] *Id.*

[19] *Id.*

vulnerabilities on Saturday, November 3, 2018 "in confidence…so that something could be done about it without exposing the vulnerability to the public."[20]

24.     Separately, on Saturday, November 3, 2018, the Georgia Democratic Party was informed that the state's voter registration system possessed security vulnerabilities.[21] The Georgia Democratic Party received an email containing data that allegedly demonstrated the system vulnerabilities.[22] Sara Tindall Ghazal, Voter Protection Director for the Democratic Party of Georgia, reached out to cybersecurity experts, who confirmed the problems with the system.[23] Ms. Ghazal forwarded an email that the Georgia Democratic Party received to the cybersecurity experts after receiving confirmation of the security vulnerabilities.[24] On information and belief, by mid-day Saturday, those experts notified Georgia officials of the issue.[25]

---

[20] Jordan Wilkie & Timothy Pratt, *Georgia's Voter Registration System Like 'Open Bank Safe Door,'* Who. What. Why. (Nov. 4, 2018), https://whowhatwhy.org/2018/11/04/exclusive-georgias-voter-registration-system-like-open-bank-safe-door/.

[21] Jordan Wilkie & Timothy Pratt, *Kemp's Aggressive Gambit to Distract From Election Security Crisis*, Who. What. Why., Nov. 4, 2018.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] Jack Gillum, Jessica Huseman, Mike Tigas, Jeff Kao, & Stephen Fowler, *Georgia Officials Quietly Patched Security Hole They Said Didn't Exist*, ProPublica (Nov. 5, 2018), https://www.propublica.org/article/georgia-officials-quietly-patched-security-holes-they-said-did-not-exist.

25.   On Sunday, November 4, 2018, Defendant's office reacted to that

weekend's news by issuing a political press release, announcing that the office had

opened an investigation on Saturday, November 3, 2018, into the Georgia

Democratic Party for potential criminal cyber activity.  The statement read:

> AFTER FAILED HACKING ATTEMPT, SOS LAUNCHES
> INVESTIGATION INTO GEORGIA DEMOCRATIC PARTY
>
> ATLANTA – After a failed attempt to hack the state's voter
> registration system, the Secretary of State's office opened an
> investigation into the Democratic Party of Georgia on the
> evening of Saturday, November 3, 2018. Federal partners,
> including the Department of Homeland Security and Federal
> Bureau of Investigation, were immediately alerted.
>
> "While we cannot comment on the specifics of an ongoing
> investigation, I can confirm that the Democratic Party of Georgia is
> under investigation for possible cyber crimes," said Candice Broce,
> Press Secretary. "We can also confirm that no personal data was
> breached and our system remains secure."

26.   Later on Sunday, November 4, 2018, Defendant's office released

another statement on the investigation.  The statement read:

> SOS RELEASES MORE DETAILS OVER FAILED
> CYBERATTACK, OFFICIALLY REQUESTS FBI TO
> INVESTIGATE
>
> ATLANTA – The Secretary of State's Office issues the
> following update:
>
> "We opened an investigation into the Democratic Party of Georgia
> after receiving information from our legal team about failed efforts to
> breach the online voter registration system and My Voter Page. We
> are working with our private sector vendors and investigators to

review data logs. We have contacted our federal partners and formally requested the Federal Bureau of Investigation to investigate these possible cyber crimes. The Secretary of State's office will release more information as it becomes available."

27.     On that same day, Defendant addressed the allegations and the investigation, and a spokeswoman for Defendant, Candice Broce, alleged that Democrats possessed software that could pull personal voter data from the voter registration sites.[26] The Georgia Democratic Party maintains, however, that the email in question came from someone outside of the organization and that the Party only forwarded it to cyber security experts.[27]

28.     The accusations from Defendant brought greater national (and likely international) attention to the vulnerabilities on the state's My Voter Page and voter registration sites.[28]

---

[26] Amy Gardner, *Concerns About Voter Access Dominate Final Stretch Before Election Day*, Washington Post (Nov. 4, 2018), https://www.washingtonpost.com/politics/concerns-about-voter-access-dominate-final-stretch-before-election-day/2018/11/04/b660c216-dece-11e8-b732-3c72cbf131f2_story.html?utm_term=.29e8db7b1623.

[27] *Id.*

[28] *See, e.g.*, *Security experts say Georgia's voter database vulnerable to hackers*, Associated Press (Nov. 5, 2018), https://www.nbcnews.com/politics/elections/security-experts-say-georgia-s-voter-database-vulnerable-hackers-n931266; Richard Fausset & Alan Blinder, *Brian Kemp's Office, Without Citing Evidence, Investigates Georgia Democrats Over Alleged 'Hack,'* New York Times (Nov. 4, 2018), https://www.nytimes.com/2018/11/04/us/politics/georgia-elections-kemp-voters-hack.html; Rick Hasen, *Brian Kemp Just Engaged in a Last-Minute Act of*

29.     Defendant's decision to publicize the vulnerabilities of Georgia's election system by attacking the Georgia Democratic Party, while the vulnerabilities persisted, marked a continuation of Defendant's past denials that Georgia's voting system was exploitable.

30.     Furthermore, the statement by Defendant's spokeswoman that the "system remains secure"[29] was belied by revelations that, hours later, State officials attempted to fix the very problems that had been exposed.[30]

31.     On information and belief, there were no fixes to these vulnerabilities for several hours after this national publicity.  On information and belief, vulnerabilities in the system persisted at least throughout Sunday, November 4.

## COUNT I
### Violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution

32.     Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

---

*Banana-Republic Level Voter Manipulation in Georgia*, Slate (Nov. 4, 2018), https://slate.com/news-and-politics/2018/11/georgia-governor-candidate-brian-kemp-attempts-last-minute-banana-republic-style-voter-manipulation.html.
[29] *See* supra ¶ 19.
[30] Jack Gillum, Jessica Huseman, Mike Tigas, Jeff Kao, & Stephen Fowler, *Georgia Officials Quietly Patched Security Hole They Said Didn't Exist*, ProPublica (Nov. 5, 2018), https://www.propublica.org/article/georgia-officials-quietly-patched-security-holes-they-said-did-not-exist.

33.    The Fourteenth Amendment protects an individual's right to vote from deprivation without due process of law.

34.    In the circumstances alleged here, Defendant's knowing maintenance of an unsecure voter registration database and his amplification of public attention to the security vulnerabilities of the voter registration database just prior to the election have recklessly exposed voters to potential tampering with their voter registration records. The increased risk to voters coupled with the State's existing provisional ballot counting scheme, *see* Ga. Code §§ 21-2-418, 419, under which provisional ballots will not be counted for voters whose names are not found on the voter registration list, risk denying the right of eligible Georgia citizens to vote in violation of the Fourteenth Amendment's Due Process Clause.

35.    Defendant, and his agents and employees, have materially increased the risk that eligible voters have been and will be unlawfully removed from the State voter registration database or will have their voter registration information unlawfully manipulated in a manner that prevents them from casting a regular ballot, by knowingly maintaining an unsecure voter registration database and then exacerbating the security risk by exposing the vulnerabilities in the State voter registration database to increased publicity just prior to the election.

36.    As a result of Defendant's actions, eligible voters who have taken the required steps to register and maintain their registrations may—through no fault of their own—arrive at the polls on Election Day and not be permitted to cast a regular ballot.

37.    Defendant's actions have created a situation that is fundamentally unfair to voters whose registrations are altered or removed. Those voters reasonably relied on the procedures and systems established by Defendant and the State and should not be deprived of their votes in violation of the Due Process Clause.

38.    Georgia's provisional ballot counting scheme fails to provide adequate process here. A voter's provisional ballot is not counted unless elections officials affirmatively determine that the voter is duly registered and the State's information may not be accurate at the time the provisional ballots are counted, as a result of Secretary Kemp's reckless maintenance of the State voter registration database and his publication of its vulnerability just before the election.

## COUNT II
### Undue Burden on the Right to Vote in Violation of the Fourteenth Amendment of the U.S. Constitution

39.    Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

40.    The Fourteenth Amendments protects individuals' right to vote from unreasonable burdens imposed by the State. *See generally Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

41.    In the circumstances alleged here, Defendant's maintenance of an unsecure voter registration database, his exposure of the security vulnerabilities of the voter registration database to further publicity just prior to the election, and the State's provisional ballot counting scheme impose a severe burden on individuals' right to vote.

42.    Defendant, and his agents and employees, have materially increased the risk that eligible voters have been and will be unlawfully removed from the State voter registration database or will have their voter registration information unlawfully manipulated in a manner that prevents them from casting a regular ballot, by maintaining an unsecure voter registration database and then exacerbating the security risk by publicizing the vulnerabilities in the State voter registration database just prior to the election. Preventing eligible, properly registered voters from casting regular ballots constitutes a severe burden on their right to vote.

43.    Georgia's provisional ballot counting scheme exacerbates the severe burden on the right to vote of individuals who were prevented from casting ballots

as a result of Defendant's actions. A voter's provisional ballot is not counted unless election officials affirmatively determine that the voter is duly registered. The State's voter registration information may not be accurate at the time the provisional ballots are counted, as a result of Defendant's reckless maintenance of the State voter registration database and his publication of its vulnerability just before the election.

44.    Furthermore, under the current provisional ballot system, it may be impossible for voters to provide adequate proof of their registration, because the information in the State voter registration database may have been manipulated at the time the provisional ballots are counted.

## COUNT III
## Violation of the Help America Vote Act, 52 U.S.C. § 21082

45.    Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

46.    The Help America Vote Act (HAVA) requires the State to provide an individual who is not on the voter registration list or whom an election official asserts is not eligible to vote with a provisional ballot, and the statute requires the State to count the ballot if the voter is eligible to vote. *See* 52 U.S.C. 21082(a).

47.    In light of Defendant's maintenance of an unsecure voter registration database and his publication of the vulnerability of the database just before an

election, the State's provisional ballot counting scheme violates HAVA. Specifically, the process by which the State determines whether a provisional ballot is valid, and the fact that the voter registration database may have been manipulated, violates HAVA's requirement that the State count eligible voters' provisional ballots.

**COUNT IV**
**Violation of Art. II, Sec. 1 of the Georgia Constitution**

48.    Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

49.    Article II, Section 1 of the Georgia Constitution provides that every person who is qualified to vote "shall be entitled to vote at any election by the people." A "qualified elector is guaranteed the fundamental right to vote provided he or she uses one of the procedures put forth by the legislature…." *Democratic Party of Georgia, Inc. v. Perdue*, 288 Ga. 720, 727 (2011).

50.    As a result of Defendant's maintenance of an unsecure voter registration database and his publication of the vulnerability of the database just before an election, qualified voters who have duly registered and attempted to cast a ballot in compliance with the procedures put forth by the legislature may be deprived of their fundamental right to vote.

51.    Defendant's actions and his implementation of state law therefore violate the Georgia Constitution.

## COUNT V
### Violation of Ga. Code § 21-2-211

52.    Plaintiffs repeat the allegations in the foregoing paragraphs and incorporate them as though fully set forth herein.

53.    The Georgia Code requires the Secretary of State to "maintain a list of all eligible and qualified registered electors" in the State. Ga. Code § 21-2-211.

54.    As a result of Defendant's maintenance of an unsecure voter registration database and his publication of the vulnerability of the database just before an election, the State voter registration list may not contain all eligible and qualified registered electors.

55.    Defendant's actions and his implementation of state law therefore violate Section 21-2-211 of the Georgia Code.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court issue declaratory and injunctive relief if there is a statistically significant[31] increase in the percentage of

---

[31] A simple and commonplace statistical method called regression analysis could determine whether the provisional ballot rate is higher in the 2018 election than in the last three federal elections, to a level where the Court could be confident to a 95% level (an accepted standard for academic research) that the variation was not due to natural fluctuation.

provisional ballots cast (relative to the total number of votes) in the 2018 elections as compared to the 2012, 2014, and 2016 elections: (1) statewide, (2) in counties where the percentage of minority or African American voters is greater than the statewide percentage, or (3) in Fulton, Gwinnett, Cobb, and DeKalb counties (the only counties with at least 700 thousand residents).

If these conditions are met, Plaintiff requests that the Court:

(1) Declare that Defendant's maintenance of the State voter registration database, his publication of its security vulnerabilities, and his implementation of the State's provisional ballot laws violate the Due Process Clause and impose a severe burden on the right to vote in violation of the Fourteenth Amendment;

(2) Declare that Defendant's maintenance of the State voter registration database, his publication of its security vulnerabilities, and his implementation of the State's provisional ballot laws violate HAVA;

(3) Declare that Defendant's maintenance of the State voter registration database, his publication of its security vulnerabilities, and his implementation of the State's provisional ballot laws violate the Georgia Constitution and the Georgia Code;

(4) Issue a temporary restraining order, preliminary injunction, and permanent injunction, enjoining Defendant from enforcing the State's provisional ballot laws, to the extent such enforcement violates federal law. Specifically, Plaintiffs ask:

    a. Defendant shall issue an Order to the election superintendent of each county or municipality directing that the superintendent generate a list (hereafter, "the List") of individuals who cast a provisional ballot during early voting period between October 15, 2018 and November 5, 2018, and during regular voting on November 6, 2018 within his or her county or municipality on the basis that the voter's name was not found on the official list of registered voters.   The List shall be transmitted electronically to each clerk and counsel for Plaintiff by 9:00 a.m. November 9, 2018.

    b. Defendant shall issue an Order to the board of registrars of each county or municipality stating, at a minimum, as follows:

        i. Voters on the List who voted by provisional ballot shall be verified before other provisional ballots.

        ii. Voters on the List who fill out a provisional ballot shall be presumed to be validly registered and eligible and entitled to

vote. Only upon a showing by clear and convincing evidence that a voter is not eligible and entitled to vote or was not registered shall the registrars reject that voter's provisional ballot.

iii. No ballot shall be rejected based solely on information in the My Voter database. Information that can be considered as evidence that a voter is ineligible or not properly registered includes, but is not limited to: a copy of the voter's registration application demonstrating that it was not timely or that the voter was ineligible, information from the Georgia Secretary of State or law enforcement agencies showing that the individual is disqualified from voting because he or she is serving a sentence of confinement or parole for a felony conviction, and information from the Division of Motor Vehicles motor voter database showing that the individual moved out of the voting jurisdiction or has not attained voting age.

iv. For any voter on the List whose provisional ballot has been rejected, the board of registrars shall, no later than 4 business days after the election, contact the voter in writing by

forwardable mail and by telephone, where provided, stating his or her ballot has been rejected at the county level and the reason for the rejection and provide Defendant with a copy of the writing. Plaintiffs' counsel shall have input into the language of the written notice.

v. For each ballot rejected at the county level of a voter on the List, the registrars shall provide Defendant with a copy of the provisional ballot affidavit no later than the end of the 3-day provisional ballot review period, along with the evidence used to make the determination of ineligibility.

c. Defendant shall conduct an independent review of each ballot rejected at the county level and order the superintendent to count the ballot of any voter whose ballot was rejected in violation of this clear and convincing evidence standard no later than 1 week prior to the certification of the statewide results. If Defendant affirms the rejection, then Defendant shall inform the designated representative of Plaintiff's counsel and provide access to the evidence upon which the determination was made within 1 business day and in no event later than 4 business days prior to the certification of the statewide results.

24

d. The Parties shall enter into a protective order to preserve the confidentiality of any personally identifiable information.

e. The Court shall retain continuing jurisdiction over any disputes over voter eligibility arising after Defendant's review.

(5) Award Plaintiff the costs of this proceeding, including reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 42 U.S.C. § 1988; and

(6) Grant Plaintiff such other relief as the Court deems just and proper.


Dated:  November 5, 2018

DLA PIPER LLP

By:    /s/ Christopher Campbell

Christopher G. Campbell
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, GA 30309-3450
(404) 736-7808
christopher.campbell@dlapiper.com

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
Robert A. Atkins
    (*pro hac vice* application to be filed)
        NY Bar No. 2210771
Farrah R. Berse
    (*pro hac vice* application to be filed)

25

NY Bar No. 4129706
Makiko Hiromi
 (*pro hac vice* application to be filed)
 NY Bar No. 5376165
William E. Freeland
 (*pro hac vice* application to be filed)
 NY Bar No. 5450648
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
ratkins@paulweiss.com
fberse@paulweiss.com
mhiromi@paulweiss.com
wfreeland@paulweiss.com

BRENNAN CENTER FOR JUSTICE AT
NEW YORK UNIVERSITY SCHOOL OF LAW
Myrna Pérez
 (*pro hac vice* application to be filed)
 NY Bar No. 4874095
Lawrence D. Norden
 (*pro hac vice* application to be filed)
 NY Bar No. 2881464
Wendy R. Weiser
 (*pro hac vice* application to be filed)
 NY Bar No. 2919595
Maximillian Feldman
 (*pro hac vice* application to be filed)
 NY Bar No. 5237276
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
perezm@brennan.law.nyu.edu
nordenl@brennan.law.nyu.edu
weiserw@brennan.law.nyu.edu
feldmanm@brennan.law.nyu.edu

*Attorneys for Plaintiff*