## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| COMMON CAUSE GEORGIA, as an organization, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | |
| | ) | File No. 1:18-CV-05102-AT |
| BRIAN KEMP, in his official capacity as Secretary of State of Georgia,[1] | ) ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND EXPEDITED DISCOVERY

### INTRODUCTION

Plaintiff's lawsuit and motion for a temporary restraining order do not provide the legal basis, let alone the evidence, that would be necessary to support the extraordinary relief Plaintiff seeks.  Plaintiff essentially asks this Court to ignore well-established Georgia law regarding the due process surrounding provisional ballots and allow those ballots to be considered regardless of whether the electors complied with Georgia law.  Plaintiff admits it has had concerns about

---

[1] Defendant Kemp resigned from his position as Secretary of State, which will be effective later today.  Governor Deal has appointed Robyn A. Crittenden as the new Secretary of State for the State of Georgia.

the alleged "vulnerabilities" of the My Voter Page on the Secretary of State's website for **years.**  Plaintiff also expressed concerns about the provisional voting system in Georgia, which has also been in place for **years**.  Yet, Plaintiff waited until the day before this election to file this lawsuit, and only after learning the number of provisional ballots that were outstanding did Plaintiff seek immediate relief.  This is not a case about the current election; in reality, it is a challenge to Georgia's provisional voting laws that could have and should have been brought well before this election to prevent the kind of "[j]udicial involvement in vote-counting [that] invites ugly consequences."  <u>Fla. State Conf. of N.A.A.C.P. v. Browning</u>, 522 F.3d 1153, 1164 (11th Cir. 2008).  Put simply, Plaintiff's delay weighs against the temporary, extraordinary relief Plaintiff now seeks.  This is particularly true in light of the fact that statewide runoffs are likely; ballots must be prepared, and early voting may commence as early as the week after Thanksgiving.

Most importantly, Plaintiff has not shown it has an injury sufficient to confer jurisdiction on this Court.  In its Complaint, Plaintiff vaguely alleges it has had to "redouble its efforts to counter this latest challenge to Georgia citizens' fundamental right to vote" without further explanation.  This is not enough to confer standing.  Furthermore, Plaintiff relies solely on unsubstantiated hearsay and speculation to support its contention that state and federal violations have

occurred, which is not enough to grant the drastic relief Plaintiff currently seeks. Finally, it is not in the public interest for the Court to grant Plaintiff's requested injunction. The requested relief would cause a massive disruption to the Georgia election process and go against well-established Georgia law regarding the processing of provisional ballots.

<u>**ARGUMENT AND CITATION OF AUTHORITY**</u>

**I.   Plaintiff Lacks Standing**.

Article III of the Constitution constrains the federal courts' authority to resolve only cases and controversies, and the courts therefore have jurisdiction only over litigants who have standing to sue. <u>Nicklaw v. Citimortgage, Inc.</u>, 839 F.3d 998, 1001 (11th Cir. 2016) (citing U.S. Const. art. III, §§ 1-2 and <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992)). "Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." <u>Bochese v. Town of Ponce Inlet</u>, 405 F.3d 964, 974 (11th. Cir 2005) (quoting <u>Dillard v. Baldwin Cty. Comm'rs</u>, 225 F.3d 1271, 1275 (11th Cir. 2000) (citing <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 102 (1998))). Indeed, there is "[n]o principle . . . more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of

federal court jurisdiction to actual cases or controversies.  DaimlerChrysler Corp.
v. Cuno, 547 U.S. 332, 341 (2006).

Plaintiff must establish that it has standing to sue based on its Complaint. Id.
at 976 (citing Raines v. Byrd, 521 U.S. 811, 818 (1997)).

Article III standing has three minimum requirements: (1) injury in fact; (2)
causation; and (3) redressability. Id. at 980 (quoting Lujan, 504 U.S. at 560-61).
All three elements are required, and each must be supported in the same way as
any other matter on which Plaintiff bears the burden of proof.  Id. at 975 (quoting
Lujan, 504 U.S. at 561).  It is the Plaintiff's burden to clearly and specifically set
forth facts in the complaint sufficient to satisfy Article III standing:

> It is not enough that the [plaintiff]'s complaint sets forth facts
> from which we could **imagine** an injury sufficient to satisfy
> Article III's standing requirements, since we should not
> speculate concerning the existence of standing, nor should we
> imagine or piece together an injury sufficient to give plaintiff
> standing when it has demonstrated none.  The plaintiff has the
> burden to clearly and specifically set forth facts sufficient to
> satisfy Art. III standing requirements.  If the plaintiff fails to
> meet its burden, this court lacks the power to create jurisdiction
> by embellishing a deficient allegation of injury.

Id. at 976 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) and citing
Warth v. Seldin, 422 U.S. 490, 518 (1975)) (internal quotation marks and brackets
omitted).

### A. Plaintiff has not shown an imminent injury sufficient to have standing to pursue this temporary restraining order.

First, a plaintiff only suffered an "injury in fact if he suffered an invasion of a legally protected interest that is concrete, particularized, and actual or imminent." Nicklaw, 839 F.3d at 1002 (citing Lujan, 504 U.S. at 560). A concrete injury is one that actually exists as a factual matter. Id. (citing Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1548 (2016)). A concrete injury is not one that is conjectural or hypothetical. Bochese, 405 F.3d at 980 (quoting Lujan, 504 U.S. at 560-61). See also id. at 985 ("We simply cannot conclude that the loss of a hypothetical and uncertain **prospect** of earning a sum of money amounts to an 'actual' or 'imminent' injury."). A concrete injury must be one that results in a "demonstrable, particularized injury" to the **plaintiff**. Id. (quoting Warth, 422 U.S. at 508). "The Supreme Court has 'repeatedly reiterated that 'threatened injury must be **certainly impending** to constitute injury in fact' and that 'allegations of **possible** future injury' are not sufficient." Ga. Republican Party v. SEC, 888 F.3d 1198, 1202 (11th Cir. 2018) (quoting Whitmore, 495 U.S. at 158).

A court's jurisdictional authority under Article III "exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some

threatened or actual injury resulting from the putatively illegal action." Id.
(quoting Warth 422 U.S. at 499) (internal quotation marks omitted).  An alleged
injury alone is not enough to establish standing.  Plaintiff must also show an injury
that is "**certainly** impending" and traceable to the challenged action. Clapper v.
Amnesty Int'l USA, 568 U.S. 398, 409, 133 S. Ct. 1138 (2013) (emphasis in
original).  A mere belief that there is a connection is not enough.  Id.

The alleged injury here amounts to a belief that a potential risk of voter-
record manipulation might exist.  [Doc. 1 at ¶¶ 10, 12 ("It is believed that an
attacker could potentially automate this process to change the registration of
multiple voters at once," and "While **it is not known** how long the vulnerabilities
described above have been in place or **whether they have been exploited in any
way**, these mistakes could possibly be the result of vulnerabilities being exploited
to change or delete voter information.") (emphasis added).]  The alleged injury
thus is speculative and does not constitute an actual, concrete, particularized, *de
facto* injury required to support standing and, instead, is the sort of conjectural or
hypothetical allegation that deprives this Court of jurisdiction over Plaintiff's
action.  See Bochese, 405 F.3d at 980 (quoting Lujan, 504 U.S. at 560-61).  The
Court therefore does not have jurisdiction over Plaintiff's suit.

## B. Plaintiff Fails to Demonstrate It Has Standing as an Organization.

Moreover, a plaintiff must show and rely only on injury that it has suffered and cannot, for example, rely on potential harm that may have befallen others.  See Gill v. Whitford, 138 S.Ct. 1916, 1931 (2018).  In the complaint, Plaintiff does **not** attempt to enforce the rights of its members, nor can it.  There are **no** allegations that any of Plaintiff's members' voting information was changed due to a hack into the My Voter Page or even that a hack occurred.  This deficiency is fatal because without further evidence or a single voter that has suffered this kind of imagined harm, such harm is simply in the realm of speculation and conjecture.  See Whitmore v. Arkansas, 495 U.S. 149, 158-159, 110 S.Ct. 1717 (1990) (collecting cases on potential future injury).

Rather, Plaintiff merely copies the wording from prior Eleventh Circuit opinions addressing organizational standing in the election context - specifically, the standing alleged by the NAACP in Common Cause/Georgia v. Billups, 554 F.3d 1340 (11th Cir. 2009).  There, the NAACP (and individual voters) challenged Georgia's recently-enacted voter ID law, claiming the requirements imposed an unconstitutional poll tax or violated the Civil Rights Act or the Voting Rights Act. The Eleventh Circuit determined that the NAACP had standing as an organization "to sue on its own behalf if the defendant's illegal acts **impair its ability to engage in its projects by forcing the organization to divert resources to counteract**

**those illegal acts**.” Id. at 1350 (emphasis added).  In Billups, the NAACP presented testimony and evidence that it had to re-route resources to assist voters in complying with the newly-enacted statute and its photo identification requirements.  Specifically, the president of the Georgia chapter of the NAACP testified that the new legislation diverted volunteers and resources “from ‘getting voters to the polls’ to helping them obtain acceptable photo identification.”  Id. Unlike the NAACP in Billups and outside a vague allegation that it had to “redouble its efforts to counter this latest challenge to Georgia citizens’ fundamental right to vote” [Doc. 1 at ¶5], Plaintiff has failed to allege how the alleged “vulnerabilities” in the “My Voter Page” has caused it to have “fewer resources to devote to its other organizational activities.”  This is especially true given that the provisional ballot statutes and regulations have been in place for years.  What’s more, the Eleventh Circuit is clear that a plaintiff “cannot bootstrap the cost of detecting and challenging the illegal practices into injury for standing purposes.” Florida State Conf. of the NAACP v. Browning, 522 F.3d 1153, 1166 (11th Cir. 2008).  These “costs” must be “**unrelated** to the legal challenge.” Id.

Most of the Eleventh Circuit’s decisions on organizational standing came before Clapper, but all of those cases were readily able to identify a traceable harm connected to the actions of the named defendant.  In Browning, it was a new voter

verification requirement that had not yet been used in an election, where some voters had been wrongly rejected by the defendant.  Browning, 522 F.3d at 1157-58.  In Billups, it was helping voters obtain photo identification in a challenge to the state's new photo identification law.  Billups, 554 F.3d at 1353-55 (11th Cir. 2009).  In Ga. Latino Alliance for Human Rights, it was the cancellation of citizenship classes to address inquiries about a new immigration law. Ga. Latino Alliance for Human Rights v. Governor of Ga., 691 F. 3d 1250, 1260 (11th Cir. 2012).  In Arcia, it was a new list maintenance program from the state. Arcia v. Fla. Sec. of State, 772 F.3d 1335, 1340 (11th Cir. 2014).  Here, there is no evidence, outside Plaintiff's legal challenge to "potential" vulnerabilities and alleged tampering, that Defendant's actions have cause Plaintiff to divert resources to "counteract" the alleged conduct.

### C. Plaintiff's injuries are not redressable by a favorable ruling.

Finally, Plaintiff's alleged injury must be redressable by the court; in other words, it must be likely—not merely speculative—that a favorable decision by the court will redress the plaintiff's specific, alleged injury.  Bochese, 405 F.3d at 980 (quoting Lujan, 504 U.S. at 560-61); cf. Kawa Orthodontics, LLP, 773 F.3d at 247 (ruling that where the plaintiff suffered alleged injury that was financial in nature, money damages were only relief that could redress alleged injury, and the plaintiff

failed the redressability requirement because it did not seek money damages in its complaint).

Here, Plaintiff cannot demonstrate redressability because Defendant does not control the counting of provisional ballots. O.C.G.A. §§ 21-2-50 and 21-2-50.2. Instead, it is the local election superintendents whom the General Assembly has charged with responsibility for the counting of election ballots, and they do not work under the Defendant's supervision. O.C.G.A. § 21-2-379.11 ("In primaries and elections in which direct recording electronic (DRE) voting equipment is used, the ballots shall be counted at the precinct or tabulating center under the direction of the superintendent."). The duty of counting provisional ballots falls squarely on the county boards of registrars, and the governing Code provisions mention the Secretary only as the recipient of a report stating the number of provisional ballots cast and counted in the election. O.C.G.A. § 21-2-419(e); see O.C.G.A. § 21-2-386(a)(1)(D) (providing provisional ballots for absentee voters only to be counted if **registrars** can timely verify required voter information). Because the Secretary, who is the only defendant Plaintiff named in this case, cannot provide the remedy sought, Plaintiff fails the redressability requirement of standing and the Court lacks jurisdiction over the action. See Women's Emergency Network v. Bush, 323 F.3d

937, 949 (11th Cir. 2003) ("General executive power is not a basis for jurisdiction in most circumstances").

## II. Plaintiff Fails to Meet Its Burden of Showing Entitlement to a Temporary Restraining Order.

"It is settled law in this Circuit that a preliminary injunction is an 'extraordinary and drastic remedy.'" <u>Dekalb County Sch. Dist. v. Ga. Bd. of Educ.</u>, 2013 U.S. Dist. LEXIS 29535, *4 (N.D. Ga. Mar. 4, 2013) (citing <u>Zardui-Quintana v. Richard</u>, 768 F.2d 1213, 1216 (11th Cir. 1985)). "There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, that the issuing of an injunction." <u>Congress of Racial Equality v. Douglas</u>, 318 F.2d 95, 98 n. 2 (5th Cir. 1963). Accordingly, such relief "never ought to be extended, unless to cases of great injury, where courts of law cannot afford an adequate and commensurate remedy in damages." <u>Id</u>. The Eleventh Circuit has instructed its district courts to be even more tentative in issuing injunctions when, as here, the party to be enjoined is a state governmental entity, stating:

> when, as in this case, [equitable remedies] are sought to be applied to officials of one sovereign by the courts of another, they can impair comity, the mutual respect of sovereigns—a legitimate interest even of such constrained sovereigns as the states and the federal government . . . [T]here is not an absolute right to an injunction in a case in which it would impair or affront the sovereign powers or dignity of a state . . . .

McKusick v. City of Melbourne, Fla., 96 F.3d 478, 487-88 (11th Cir. 1996).

In order to obtain such relief, the movant must show: (i) a substantial likelihood of success on the merits of the underlying case; (ii) irreparable harm in the absence of an injunction, (iii) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued; and (iv) an injunction would not disserve the public interest.  See id.  The movant has the burden of persuasion as to all four requirements. See United States v. Jefferson County, 720 F. 2d 1511 (11th Cir. 1983).

A typical injunction is prohibitive in nature and seeks simply to maintain the status quo pending a resolution of the merits of the case.  See Mercedes-Benz U.S. Int'l, Inc. v. Cobasys, LLC, 605 F. Supp. 2d 1189, 1196 (N.D. Ala. 2009).  "When a preliminary injunction is sought to force another party to act, rather than simply to maintain the status quo, it becomes a 'mandatory or affirmative injunction,' and the burden on the moving party increases."  Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp., 441 F.2d 560, 561 (5th Cir. 1971); see also, Dantzler, Inc. v. Hubert Moore Lumber Co., 2013 U.S. Dist. LEXIS 78664 (M.D. Ga. June 5, 2013) ("Plaintiff's request must be considered by the Court with greater scrutiny because the burden for a movant requesting a mandatory injunction is higher.").  A plaintiff seeking a mandatory injunction "must make a clear showing of entitlement to the

relief sought or demonstrate that extreme or serious damage would result absent the relief." Verizon Wireless Pers. Commc'n LP v. City of Jacksonville, Fla., 670 F. Supp. 2d 1330, 1346 (M.D. Fla. 2009). "[M]andatory injunctions are rarely issued . . . except upon the clearest equitable grounds." United States v. Bd. of Educ. of Green Cty., Miss., 332 F.2d 40, 46 (5th Cir.1965); see Martinez v. Mathews, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored").

As explained below, Plaintiff has failed to establish the elements necessary to support their extraordinary request for mandatory, preliminary injunctive relief. This Court should not enter the dramatic changes in Georgia election procedures sought **after** the election, especially given the extremely disruptive nature of the proposed changes, and Plaintiff's motion should be denied.

## A. Plaintiff Cannot Show a Substantial Likelihood of Prevailing on the Merits.

The most important factor in deciding whether to grant or deny a preliminary injunction is the plaintiff's likelihood of succeeding on the merits; a failure to meet this initial hurdle relieves a court from considering the remaining factors. Church v. City of Huntsville, 30 F.3d 1332, 1341-45 (11th Cir. 1994)

(citing Northeastern Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990).

Plaintiff's entire case rises and falls on speculation from out of court declarants, activists, and reporters.  The information frequently contains hearsay within hearsay within hearsay.  And while courts in this Circuit frequently apply a permissive standard to determine whether evidence can be admitted in a preliminary injunction setting, that standard is not limitless.  See Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (citing Asseo v. Pan Am. Grain Co., 805 F.2d 23, 26 (1st Cir.1986)).  Indeed, evidence should be excluded if it is hearsay and inappropriate "given the character and objectives of the injunctive proceeding."  Id.  The evidence upon which the Plaintiff relies is highly speculative hearsay that is inappropriate given the significant relief the Plaintiff's request.

For example, Exhibit A is an internet posting that appears to be a weblog operated by someone who has written a book entitled: *Family of Secrets: The Bush Dynasty, America's Invisible Government and the Secret History of the Last Fifty Years*.[2]  Exhibit B is a blog post from someone who appears "not [to be] a professional driver on a closed course" and is a graduate student at the University

---

[2] *See* https://whowhatwhy.org/the-project/.

of Michigan.  Exhibit F is an affidavit from a declarant that may be able to testify and opines on the security of DRE voting machines, which are not at issue in this lawsuit.  Other exhibits are news articles that contain hearsay and speculation but no statements (much less any under oath) of persons who have improperly been denied the opportunity to have their provisional ballot counted.

Plaintiff is simply asking the Court to assume that a vulnerability existed and that it had a material impact on the election based on the unsworn, out-of-court statements of random individuals and the opinion of the article's authors that a "potential" for harm existed.  Even at this early stage, such unsubstantiated assertions are insufficient to warrant the drastic and extraordinary relief of granting a preliminary injunction.

### B. Plaintiff Cannot Demonstrate Irreparable Harm Absent the Grant of a Temporary Restraining Order.

Even if Plaintiff established a likelihood of success on the merits (which, as discussed, it has not), its failure to demonstrate "a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."  Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000).  "A showing of irreparable injury is the sine qua non of injunctive relief."  Id.  "[T]he asserted irreparable injury must be neither remote nor speculative, but actual and imminent."  Id.; see also Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th

Cir. 1994) (injunctive relief is warranted only when a party "alleges, and ultimately proves, a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury").

Here, Plaintiff has not even alleged – let alone established – that there is any threat of irreparable harm to itself.  Rather, Plaintiff asserts the potential for harm exists for individuals outside of this lawsuit.  Such allegations, even if true, cannot form the for the issuance of a preliminary injunction. See, e.g., Sci. Applications, Inc. v. Energy Conservation Corp. of Am., 436 F. Supp. 354, 357 (N.D. Ga. 1977) ("[B]urden is on the plaintiffs to demonstrate: . . . an immediate and real threat of irreparable injury **to plaintiffs** [and] that the imminent harm **to plaintiffs** is greater than the harm to defendant if an injunction is imposed. . . .") (emphasis added).

"[C]ourts have frequently considered delay in initiating an action where . . . preliminary injunctive relief has been requested" and held that "delay is suggestive of a lack of irreparable harm."  Calhoun v. Lillenas Publg., 298 F.3d 1228, 1235 (11th Cir. 2002).  As the Eleventh Circuit has observed, its "sister circuits and district courts within this Circuit and elsewhere have found that a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." Wreal, LLC v. Amazon.com, 840 F.3d 1244, 1248 (11th Cir. 2016) (affirming district court's finding of absence of

irreparable harm where preliminary injunction motion "relied exclusively on evidence that was available to [the plaintiff]" five months prior to the time the motion was filed).  "A delay in seeking a preliminary injunction of even only a few months – though not necessarily fatal – militates against a finding of irreparable harm." Id. See also Regions Bank v. Kaplan, 2017 U.S. Dist. LEXIS 127803, *9 (M.D. Fla. Aug. 11, 2017) (plaintiff's five-month delay in filing action and seeking injunction after learning about allegedly fraudulent transfers "belie[d] [the plaintiff's' claim of an imminent and irreparable injury"); U.S. Bank Nat'l Ass'n v. Turquoise Props. Gulf, 2010 U.S. Dist. LEXIS 60882, 13-14 (S.D. Ala. June 18, 2010) (moving party's failure to act with reasonable diligence to protect its own interests after being on notice of the challenged conduct undercuts the movant's plea that it will suffer irreparable injury unless the court issues a mandatory injunction); Hirschfeld v. Bd. of Elections, 984 F.2d 35, 39 (2nd Cir. 1993) (holding that a party's delay in seeking an injunctive relief "severely undermines [its] argument that absent a stay irreparable harm w[ill] result").

Plaintiff's delay in seeking the injunctive relief requested is sufficient to deny the injunction, and at a minimum, it severely undercuts its claim of irreparable harm and any need for immediate relief.

### C. The Disruptive Relieve Sought by Plaintiff is not Favored by the Equities and is not in the Public Interest.

Early voting has been underway in Georgia since October 15, 2018. O.C.G.A. § 21-2-385(d)(1). Since that date, Georgians have been able to vote provisional ballots if their names do not appear on the list of registered electors. O.C.G.A. § 21-2-418(a). All provisional ballots must be processed no later than the close of business **tomorrow**. O.C.G.A. § 21-2-419(c). Georgia's provisional ballot process has been in use since 2002. See 2002 GA. LAWS p. 598.

Despite weeks of early voting where voters utilized provisional ballots and Plaintiff having access to the information it alleges supports its complaint for years, Plaintiff filed this action the day before the election, [Doc. 1], and then waited. Only after learning the outcome of the election did Plaintiff move for emergency relief regarding the treatment of provisional ballots. [Doc. 15].

Plaintiff identifies its first claimed "problem" with Georgia's registration list in 2015, [Doc. 15-1, p. 9[3]], and cites research allegedly conducted in 2016. Id. While Plaintiff tries to cite to the public release of information about an attempted hack of the My Voter Page earlier this week, Plaintiff did not have to learn any new information to bring this lawsuit and has not explained why it only waited

---

[3] Plaintiff's page numbers on the Court's header do not match with page numbers at the bottom of the pages. For consistency, Defendant Kemp uses the top page numbers.

until after the election to seek a massive change in the handling of provisional ballots.

In other words, Plaintiff filed its complaint, then waited to see if provisional ballots would be an issue. As soon as it saw those ballots might decide one of the races in the 2018 election, Plaintiff filed this request to halt the orderly processing of provisional ballots by county officials—based on the "evidence" of printouts from the internet.

States have a critically important interest in the orderly conduct of elections. Purcell v. Gonzalez, 549 U.S. 1, 4-5, 127 S.Ct. 5 (2006). Without more evidence that "potential tampering" occurred, this Court should deny Plaintiff's last-ditch attempt to interfere with the election processes in Georgia.

       1.   *The balance of equities does not favor Plaintiff because of the significant disruption Plaintiff's proposed remedy would make on the election process and on Georgia voters.*

A court weighing the equities of a proposed injunction must "balance the competing claims of injury" and consider the "public consequences" of an injunction. Winter, 555 U.S. at 24. A court should consider the harm the applicant is likely to suffer with the harm the opponent will suffer if an injunction is imposed. Scott v. Roberts, 612 F.3d 1279, 1290 (11th Cir. 2010).

In this case, Plaintiff seeks an order stopping Defendant Kemp from processing provisional ballots ahead of the certification deadline, which is Tuesday, November 13, 2018 at 5:00pm. O.C.G.A. § 21-2-493(k).[4] As discussed further below and in the Declaration of Chris Harvey, the Secretary does not process any provisional ballots.  But to the extent Plaintiff seeks to enjoin local election officials, it proposes a dramatic interruption in the normal process of elections.

Plaintiff frames its claims in terms of the fundamental right to vote, but any impacted voter already has a remedy: the normal processing of provisional ballots by their local election superintendents. If there is a single voter in the category identified by Plaintiff—and Plaintiff has not identified even one—that voter can contact his or her board of registrars regarding their provisional ballot. O.C.G.A. § 21-2-419(c).

This is in sharp contrast to the massive impact on every Georgia runoff election if the Court grants Plaintiff its requested relief.  As Director Harvey outlined, local officials must process 21,190 provisional ballots before tomorrow's deadline.  (Harvey Dec. at ¶10.)  After those ballots are verified, officials still have to count them and process overseas and military ballots over the weekend to

---

[4] Because Monday, November 12 is a state holiday, the certification date in 2018 will be Tuesday.

prepare for Tuesday's certification deadline. (Harvey Dec. at ¶¶ 4-6, 11.)  If this Court enjoins the processing of provisional ballots, certification of the election must be delayed, which will cause massive disruption in the normal processes of preparation for the runoff.  (Harvey Dec. at ¶¶ 13, 14.)

The timelines set by the Election Code are clear: runoffs for Georgia races are held on December 4, 2018, O.C.G.A. § 21-2-501(a)(4). Absentee ballots for the runoff must be sent to voters "as soon as possible prior to any runoff." O.C.G.A. § 21-2-384(a)(1). If certification takes place on Tuesday, candidates within one percent of an opposing candidate can also ask for a recount for up to two business days following certification. O.C.G.A. § 21-2-495(c)(1).

A delay of even a day in the certification of the election results will be incredibly disruptive. (Harvey Dec. at ¶¶ 13, 14.) Georgia's Election Code contains tight timelines because of the "strong desire to avoid election uncertainty and the confusion and prejudice which can come in its wake" and the need for "the smooth operation of government." Broughton v. Douglas Cty. Bd. of Elections, 286 Ga. 528, 528–29, 690 S.E.2d 141 (2010) quoting Swain v. Thompson, 281 Ga. 30, 31 (2006).

In addition, the State has a strong interest in avoiding fraud in its elections. Billups, 554 F.3d 1340, 1353-55 (11th Cir. 2009). Reversing the burden of proof

and presuming all provisional ballots are valid unless shown otherwise, as Plaintiff says it seeks in its Complaint [Doc. 1, pp. 21-25], is a completely new process and will place an incredible burden on already-overtaxed election officials to try and prove a negative instead of being able to handle provisional ballots through the normal processes. It also introduces the serious possibility of fraudulent ballots being counted and included in election totals—exactly contrary to the State's interest in avoiding election fraud.

Finally, the remedy Plaintiff seeks ultimately is of immaterial consequence. Even if every outstanding provisional ballot was counted and was voted for the Democratic candidate, the outcome of the election would not change. (Harvey Dec. at ¶ 15.)

The relief Plaintiff seeks would require a complete rewrite of O.C.G.A. § 21-2-419 because this Court would have to give specific direction to non-party local election superintendents about how to process and handle provisional ballots. Plaintiff is asking for a completely reinvented and new process that has never been used in Georgia and is the exact opposite of Georgia law on the processing of provisional ballots—and it would not even make a difference in the outcome of the election.

When comparing the massive disruption to the state's election processes and the potential for fraud with the fact that Plaintiff has not produced a single voter in the situation it imagines exists and the fact that the election outcome will not change, the equities do not favor an injunction.

2. *The proposed injunction does not serve the public interest.*

Courts should use their discretion to deny injunctions that work a "chaotic and disruptive effect upon the electoral process," because they are not in the public interest. See Fishman v. Schaffer, 429 U.S. 1325, 1330, 97 S. Ct. 14 (1976); Benisek v. Lamone, ___ U.S. ___, 138 S. Ct. 1942, 1945, 201 L. Ed. 2d 398 (2018). There is a significant public interest in ensuring orderly elections and the purpose of a preliminary injunction is to preserve the status quo—not to rewrite a statute after an election is over. Benisek, 138 S.Ct. at 1945; Purcell, 549 U.S. at 4-5.

Plaintiff has not shown that the proposed injunction is in the public interest. As outlined above, Director Harvey explained the massive disruption in the Georgia runoff processes by even a slight delay in certification of votes. The chaotic effect of any order altering the process for handling provisional ballots would be unprecedented in Georgia. Fishman, 429 U.S. at 1330.

The proposed injunction is also not in the public interest because Plaintiff did not exercise reasonable diligence in placing these matters before the Court. Benisek, 138 S. Ct. at 1943-44. Plaintiff has not shown that any new information was needed before bringing this lawsuit, citing to events in 2015 and "research" from 2016 as part of its proposed "evidence." [Doc. 15-1, p. 9]. Plaintiff filed this action before the election and then sat and waited for the election outcome before seeking emergency relief instead of immediately filing for relief on the day the lawsuit was filed.

While Plaintiff claims that courts "routinely grant" preliminary injunctions involving voting, it has not cited a single case where relief was granted **after** an election result was known. See Georgia State Conference of the NAACP v. Fayette Cty. Bd. of Comm'rs, 118 F. Supp. 3d 1338, 1341 (N.D. Ga. 2015) (plaintiff sought injunction on July 17 for election to be held in September); Dillard v. Crenshaw Cty., 640 F. Supp. 1347, 1361, 1373 (M.D. Ala. 1986), order dissolved, No. CIV.A.2:85CV1332-MHT, 2006 WL 3392071 (M.D. Ala. July 31, 2006), and order dissolved, No. CIV.A. 2:85CV1332MHT, 2006 WL 3923887 (M.D. Ala. Oct. 3, 2006) (February 6 petition for injunction for elections held starting in June); Charles H. Wesley Educ. Found., Inc. v. Cox, 324 F. Supp. 2d 1358, 1361 (N.D. Ga. 2004), aff'd, 408 F.3d 1349 (11th Cir. 2005) (June petition for injunction for

elections held in July); <u>United States v. Berks Cty., Pa</u>., 250 F. Supp. 2d 525, 527

(E.D. Pa. 2003) (February 25 petition for injunction for elections in May); <u>Johnson</u>

<u>v. Halifax Cty</u>., 594 F. Supp. 161, 171 (E.D.N.C. 1984) (July order on preliminary

injunction for upcoming general elections); <u>N. Carolina State Conference of the</u>

<u>NAACP v. N. Carolina State Bd. of Elections</u>, No. 1:16CV1274, 2016 WL

6581284, at *9 (M.D.N.C. Nov. 4, 2016) (October petition for preliminary

injunction limited to registration for November election).

Given the massive disruption to the entire election process, Plaintiff has not

demonstrated how its proposed injunction will serve the public interest. Plaintiff

has not exercised reasonable diligence and its request for a temporary restraining

order should be denied. <u>Benisek</u>, 138 S.Ct. at 1944.

Respectfully submitted this 8th Day of November 2018.

> Christopher M. Carr
> Attorney General
> Georgia Bar No. 112505
> Dennis R. Dunn
> Deputy Attorney General
> Georgia Bar No. 234098
> Russell D. Willard
> Senior Assistant Attorney General
> Georgia Bar No. 760280
> State Law Department
> 40 Capitol Square, S.W.
> Atlanta, Georgia 30334
> Telephone: (404) 656-3357

*/s/ Josh B. Belinfante*
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Ryan Teague
Georgia Bar No. 701321
rteague@robbinsfirm.com
Kimberly Anderson
Georgia Bar No. 602807
kanderson@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
999 Peachtree Street, N.E., Suite 1120
Atlanta, GA 30309
Telephone: (678) 701-9381

Bryan P. Tyson
Georgia Bar No. 515411
Special Assistant Attorney General
STRICKLAND BROCKINGTON
   LEWIS LLP
Midtown Proscenium Suite 2200
1170 Peachtree Street NE
Atlanta, GA 30309
678-347-2200

Special Assistant Attorney General

*Attorneys for Defendant*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Notice has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this Notice has been prepared using 14-pt Times New Roman Font.

*/s/ Josh B. Belinfante*
Josh Belinfante
Georgia Bar No. 047399

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed the within and foregoing

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR**

**A TEMPORARY RESTRAINING ORDER AND EXPEDITED**

**DISCOVERY** with the Clerk of Court using the CM/ECF system, which

automatically sent counsel of record e-mail notification of such filing.

This 8$^h$ day of November, 2018.


*/s/ Josh Belinfante*