# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| COMMON CAUSE GEORGIA, as an organization, <br><br> *Plaintiff,* <br><br><br><br><br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, <br><br><br> *Defendant.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 18-cv-05102-AT |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF COMMON CAUSE GEORGIA'S SPECIAL MOTION FOR AN AWARD OF ATTORNEYS' FEES

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................1

II.    SUMMARY OF FACTS ......................................................................2

    A. Relevant Background ...................................................................2

    B. Enactment of H.B. 316 and H.B. 392..........................................4

    C. Dismissal of the Case and Subsequent Fees Litigation..............7

III.   ARGUMENT.......................................................................................7

    A. Identification of the Judgment and Relevant Statute upon Which
       Common Cause Is Entitled to Attorneys' Fees .........................7

    B. Common Cause Is a Prevailing Party and Is Thus Entitled to an
       Award of Attorneys' Fees and Litigation Expenses...................8

    C. Common Cause Should Be Awarded Attorney's Fees and Litigation
       Expenses in Connection with Obtaining the Order..................12

    D. Common Cause Should Also Receive Attorneys' Fees in Connection
       with Bringing This Motion......................................................23

IV.   CONCLUSION.................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACLU of Ga.* v. *Barnes*,
  168 F.3d 423 (11th Cir. 1999) ............................................................12

*Bird* v. *Sumter Cty. Bd. of Educ.*,
  No. 1:12-CV-76 (WLS), 2014 WL 1340677
  (M.D. Ga. Apr. 3, 2014) ....................................................................9

*Bivins* v. *Wrap It Up, Inc.*,
  548 F.3d 1348 (11th Cir. 2008) (per curiam) ...............................12, 13

*Blum* v. *Stenson*,
  465 U.S. 886 (1984)..........................................................................21

*Camp* v. *Cason*,
  No. 1:06-CV-1586-CAP, 2006 WL 5440436
  (N.D. Ga. Nov. 9, 2006) ...................................................................9

*Common Cause/Ga.* v. *Billups*,
  554 F.3d 1340 (11th Cir. 2009) .....................................................9, 11

*Cullens* v. *Ga. Dep't of Transp.*,
  29 F.3d 1489 (11th Cir. 1994) ..........................................................21

*Ga. State Conference of the NAACP* v. *Kemp*,
  No. 1:17-cv-1397-TCB, 2018 WL 2271244
  (N.D. Ga. Apr. 11, 2018) ...................................................................8

*Hensley* v. *Eckerhart*,
  461 U.S. 424 (1983)...................................................................*passim*

*Jackson* v. *State Bd. of Pardons & Paroles*,
  331 F.3d 790 (11th Cir. 2003) ..........................................................23

*Johnson* v. *Ga. Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ............................................................14

# TABLE OF AUTHORITIES
## (CONT'D)

**Page(s)**

*Norman* v. *Hous. Auth. of Montgomery*,
836 F.2d 1292 (11th Cir. 1988) .........................................................................24

Order Establishing Entitlement to Attorney Fees,
*Fla. Democratic Party* v. *Hood*,
No. 4:04-cv-395 (N.D. Fla. May 9, 2005), ECF No. 82......................................9

*Perdue* v. *Kenny A. ex rel. Winn*,
559 U.S. 542 (2010)...........................................................................................13

*Saizan* v. *Delta Concrete Prods. Co.*,
448 F.3d 795 (5th Cir. 2006) .............................................................................14

*Sole* v. *Wyner*,
551 U.S. 74 (2007)...............................................................................................9

*Thompson* v. *Pharmacy Corp. of Am.*,
334 F.3d 1242 (11th Cir. 2003) .........................................................................23

*Williams* v. *City of Atlanta*,
No. 1:17-cv-1943-AT, 2018 WL 2284374
(N.D. Ga. Mar. 30, 2018)..........................................................................*passim*

### CONSTITUTIONAL PROVISIONS

U.S. Const., amend. XIV .................................................................................8, 10

### STATUTES

42 U.S.C. § 1983 ..................................................................................................8

42 U.S.C. § 1988 ..................................................................................................8

52 U.S.C. § 10310(a) ...........................................................................................8

52 U.S.C. § 20901.................................................................................................8

iii

<u>**TABLE OF AUTHORITIES**</u>
**(CONT'D)**

**Page(s)**

**OTHER AUTHORITIES**

Ga. Civ. R. 54.2(A)(2) ................................................................................7

## I.    INTRODUCTION

Plaintiff Common Cause Georgia ("Common Cause") filed this lawsuit to protect Georgia voters' rights in light of documented security vulnerabilities in the State's voter registration system and the State's inadequate approach to counting provisional votes.  Common Cause achieved the relief it sought, obtaining a Temporary Restraining Order ("TRO") from this Court on November 12, 2019—one week after this lawsuit was filed.  In order to obtain the TRO, Common Cause's lawyers—many of whom have extensive voting rights litigation experience—worked hundreds of hours, and in the course of one week, filed a Complaint, seven briefs, and eighteen declarations from fact and expert witnesses, and argued Common Cause's Motion for a Temporary Restraining Order and Expedited Discovery (the "TRO Motion") in this Court.  The relief Common Cause obtained was, just months later, permanently codified into law.

Common Cause is thus a prevailing party entitled by law to recover its reasonable legal fees and litigation expenses.  While Common Cause is likely entitled to *all* of its attorneys' fees and litigation expenses for this entire case, in order to narrow the areas of disagreement, Common Cause seeks reimbursement only of (a) its fees and expenses up through the Court's Order granting the TRO; and (b) fees and expenses in connection with preparing this Special Motion for an

Award of Attorneys' Fees ("the "Fee Motion").  For the reasons discussed below, Common Cause is entitled to $139,480 in legal fees and $4,527.59 in litigation expenses in connection with the TRO Motion, and legal fees in an amount to be determined later in connection with this Fee Motion.

## II.    SUMMARY OF FACTS

### A.    **Relevant Background**

As alleged in the Complaint, in the lead-up to the November 6, 2018 general election, Georgia's voter registration systems were vulnerable to serious security breaches.  Compl. ¶¶ 9–24.  These vulnerabilities increased the risk that eligible voters would be impermissibly removed from the State's election rolls or that their registration information would be unlawfully manipulated in a way that would prevent them from casting a regular ballot.  The only recourse for voters whose names could not be found on the voter registration list was to cast a provisional ballot.  Order Granting in Part Pl.'s Mot. for TRO & Expedited Disc. & Den. Def.'s Mot. to Strike Decls. ("Order") at 2, ECF No. 62.  But under the State's then-existing provisional balloting scheme, such ballots would be rejected if election officials could not find the voters' names on the very registration server that was vulnerable to manipulation.  *Id.*  The risk that voter registration records

would be tampered with was heightened by Defendant's decision to publicize the security vulnerabilities in the days prior to the election.  Compl. ¶¶ 20–23, 25–29.

  In response to these circumstances, on November 5, 2018, Common Cause filed a Complaint against then-Secretary of State (now-Governor) Brian Kemp. The day after the election, Common Cause filed the TRO Motion to enjoin the rejection of any provisional ballots cast on the basis that the voter's name was not found on the voter registration list.  Common Cause also sought expedited discovery of: (1) the number of provisional ballots cast per county, and the reason for each; (2) guidance provided by the Secretary to county officials regarding counting provisional ballots or assessing the eligibility of provisional voters; and (3) all coding sheets or similar documents used in review of provisional ballots and ascertaining the eligibility of voters who voted by provisional ballots.

  Over the next five days, Common Cause filed seven briefs and eighteen declarations from witnesses, including an expert who noted that the change in the ratio of provisional ballots to total ballots from 2014 to 2018 was unusually high in particular counties and opined that this indicated systemic issues within these counties.[1]  This Court also heard argument on the TRO Motion.

---

[1] ECF Nos. 15-1; 15-11; 15-12; 25; 26; 27; 28; 29; 30; 31; 35; 36; 37; 46; 47; 48; 49; 50; 53; 55; 56; 58; 59; 60; 60-1; 60-2.

Five days after the motion was filed, this Court granted the TRO Motion in large part, ordering the Secretary of State to (1) immediately establish and publicize a hotline or website where provisional voters could determine if their ballots were counted and if not, the reason why; (2) direct county election superintendents to do the same; and (3) upon the receipt of certified returns from county superintendents, (a) direct county superintendents to engage in a good faith review of the eligibility of voters issued provisional ballots coded PR using all available registration documentation, or (b) conduct an independent review of the same.  Order at 52–53.   The Defendant later agreed to comply with the relevant requirements in the Order in connection with the December 2018 run-off election. *See* Joint Prelim. Report & Disc. Plan at 1, ECF No. 71.

B.  **Enactment of H.B. 316 and H.B. 392**

Following the Order, the parties continued to litigate the case by seeking and taking discovery from each other.  In addition, Common Cause served non-party subpoenas on 18 Georgia counties, as well as on a number of state agencies that might have relevant information.  July 22, 2019 Declaration of Farrah R. Berse ("Berse Decl.") ¶ 15.  As the parties were engaged in this discovery process, Georgia's legislature was, in parallel, considering potential amendments to the State's election laws.

4

On April 2, 2019, House Bill 316 was signed into law.  H.B. 316
amended Georgia's provisional ballot counting laws in ways that are relevant to
this litigation.  *See* Joint Stipulation at 2, ECF No. 116.

- Section 37 provides:  "At the earliest time possible after the casting of a
  provisional ballot, the election superintendent shall notify the Secretary
  of State that an elector cast a provisional ballot, whether such ballot was
  counted, and, if such ballot was not counted, the reason why such ballot
  was not counted."  *Id.* at 2.

- Section 38 requires that county officials make good faith efforts to
  determine whether a person casting a provisional ballot was entitled to
  vote in the election.  Those efforts include "a review of all available voter
  registration documentation, including registration information made
  available by the electors themselves and documentation of modifications
  or alterations of registration data showing changes to an elector's
  registration status."  Additional information sources "may include, but
  are not limited to, information from the Department of Driver Services,
  Department of Family and Children Services, Department of Natural
  Resources, public libraries, or any other agency of government, but not
  limited to, other county election and registration offices."  It also requires

5

county election officials to notify persons whose provisional ballots were

rejected because the county could not determine if the individual timely

registered or if the individual voted in the wrong precinct, "[a]t the

earliest time possible after a determination is made regarding a

provisional ballot." *Id.* at 2–3.

- Section 40 extended the counties' election certification deadline and

  gives Defendant authority to further extend the deadline to complete a

  precertification audit of the election. *Id.* at 3.

On May 2, 2019, House Bill 392 was signed into law to provide

additional protections for the security of the state's voter registration system.

Specifically, it directs Defendant to:

> promulgate a regulation that establishes security protocols for voter
> registration information maintained and developed by the Secretary of
> State pursuant to Code Section 21-2-211 and 52 U.S.C. Section
> 21083. The regulation shall be generally consistent with current
> industry security standards, and in promulgating the regulation, the
> secretary of state shall consider those security standards issued by the
> National Institute of Standards and Technology, the Center for
> Internet Security, and the federal Election Assistance Commission.
> The Secretary of State shall, at least annually, certify that the State of
> Georgia has substantially complied with the requirements of the
> regulation promulgated pursuant to this Code section[.]

*Id.* at 3.

C.   **Dismissal of the Case and Subsequent Fees Litigation**

In light of these measures, the parties agreed that this case should be dismissed.  Pursuant to the parties' June 14, 2019 stipulation, this Court dismissed the litigation, and set a briefing schedule for this motion.[2]

## III.   ARGUMENT

A.   **Identification of the Judgment and Relevant Statute upon Which Common Cause Is Entitled to Attorneys' Fees**

Common Cause achieved the objectives of this lawsuit by obtaining the Order, which, among other things, ordered: (1) Defendant to establish a hotline or website for provisional voters to determine if their ballots were counted, and to direct county superintendents to do the same; (2) Defendant to direct county election officials to remit certified returns and engage in a good faith review of the eligibility of provisional ballot voters; and (3) required that this review use all available documentation, not merely eNet registration information, as well as any audit trails documenting modifications or alternations of registration data.  Order at 52–53.  As detailed above, these provisions were, in large part, permanently

---

[2]   The Court's schedule, consistent with the parties' stipulation, dispensed with the default, two-step process for an attorneys' fees petition in this district. N.D. Ga. Civ. R. 54.2(A)(2).  Instead, the parties agreed that Common Cause would file all of its moving papers at one time.  *See* Joint Stipulation at 3.  The briefing schedule was later amended.  *See* Order Approving Extension of Time at 2, ECF No. 118.

codified into law by H.B. 316.  Common Cause is entitled to attorneys' fees and

costs under 42 U.S.C. § 1988(b), which applies to prevailing plaintiffs in 42 U.S.C.

§ 1983 civil rights actions.[3]

B. **Common Cause Is a Prevailing Party and Is Thus Entitled
to an Award of Attorneys' Fees and Litigation Expenses.**

Section 1988, which permits prevailing plaintiffs to recover attorneys'

fees and costs in actions such as this, "is a tool that ensures the vindication of

important rights, even when large sums of money are not at stake, by making

attorney's fees available under a privilege attorney general theory."  *Williams* v.

*City of Atlanta*, No. 1:17-cv-1943-AT, 2018 WL 2284374, at *3 (N.D. Ga. Mar.

30, 2018) (quoting *Farrar* v. *Hobby*, 506 U.S. 103, 122 (1992) (O'Connor, J.,

concurring)).  Courts routinely apply this fee-shifting framework to actions brought

to enforce voting rights statutes, including HAVA.  *See, e.g.*, *Ga. State Conference

of the NAACP* v. *Kemp,* No. 1:17-cv-1397-TCB, 2018 WL 2271244, at *1, *4

(N.D. Ga. Apr. 11, 2018) (awarding attorneys' fees and costs for a claim brought

---

[3]   The Fourteenth Amendment to the U.S. Constitution and the Help America
Vote Act, 52 U.S.C. § 20901 *et seq.*, which formed the basis for Common
Cause's successful claims, create rights enforceable under 42 U.S.C. § 1983.
Common Cause is also entitled to expert fees under 52 U.S.C. § 10310(a),
which applies to prevailing parties in actions to enforce the voting guarantees of
the Fourteenth and Fifteenth Amendments.

pursuant to 52 U.S.C. § 20510(c)); Order Establishing Entitlement to Attorney Fees at 2, 7, *Fla. Democratic Party* v. *Hood*, No. 4:04-cv-395 (N.D. Fla. May 9, 2005), ECF No. 82 (holding that plaintiff was entitled to attorneys' fees for injunction obtained under HAVA).

When considering a motion for attorneys' fees in a voting rights action, a court must first determine whether the plaintiff is a "prevailing party." *Hensley* v. *Eckerhart*, 461 U.S. 424, 433 (1983). The "touchstone" of the prevailing party inquiry under § 1988 "is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole* v. *Wyner*, 551 U.S. 74, 82 (2007) (citation omitted). The Eleventh Circuit has repeatedly held that a party does not need to obtain a final judgment in its favor in order to obtain attorneys' fees and that "a preliminary injunction on the merits . . . entitles one to prevailing party status and an award of attorney's fees." *Common Cause/Ga.* v. *Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009) (ellipsis in original).[4] Moreover, courts have broad discretion in determining whether a party

---

[4] Courts in the Eleventh Circuit treat temporary restraining orders and preliminary injunctions as the same in the context of the prevailing party inquiry. *See, e.g.*, *Bird* v. *Sumter Cty. Bd. of Educ.*, No. 1:12-CV-76 (WLS), 2014 WL 1340677, at *3 (M.D. Ga. Apr. 3, 2014); *Camp* v. *Cason*, No. 1:06-CV-1586-CAP, 2006 WL 5440436, at *2 (N.D. Ga. Nov. 9, 2006).

has prevailed for purposes of an attorneys' fees motion, and "a party who has not prevailed in the traditional sense through a court judgment on the merits may still be deemed a prevailing party." *Williams*, 2018 WL 2284374, at *3.

Common Cause is a prevailing party with respect to its claims under the Fourteenth Amendment and HAVA § 302(a).  In connection with ruling on the TRO Motion, the Court found that "the combination of the statistical evidence and witness declarations," including expert witness evidence, "persuasively demonstrates the likelihood of Plaintiff succeeding on its claims."  Order at 41.  The Court also held that Common Cause had "shown a substantial likelihood of proving that the Secretary's failure to properly maintain a reliable and secure voter registration system has and will continue to result in the infringement of the rights of the voters to cast their vote and have their votes counted."  Order at 41–42.

In the Order, the Court enjoined the certification of election results, required Defendant to establish a hotline or website for provisional ballot voters, required Defendant's hotline or website to explain why provisional ballots were not counted, required Defendant to direct county election officials to remit certified returns and engage in a good faith review of the eligibility of provisional ballot voters, and required that this review use all available documentation, not merely

eNet registration information, as well as any audit trails documenting modifications or alternations of registration data.  Order at 52–53.

In other words, the TRO granted Common Cause what it had asked for:  "preventing the final rejection of provisional ballots for the narrow class of persons who had registration problems" in a matter that would wrongfully disenfranchise voters who had been properly registered.  Tr. Hr'g Mot. TRO at 8:8–10.  Common Cause's TRO Motion thus "materially alter[ed]" the legal relationship between provisional ballot voters and Defendant, ensuring that Georgia citizens whose votes might have otherwise been rejected were counted.

The Order effected a change in Georgia law—how ballots are counted, and how voters are notified of whether their ballots are counted—that was subsequently codified into Georgia law.  This change put in place new standards governing how provisional ballots are counted and certified in Georgia, both in the aftermath of the general election and in the December 2018 run-off election.  By requiring Georgia to count and certify provisional ballots in this manner, the Order represented a "material alteration in the legal relationship" between the parties carrying "judicial imprimatur."  *Common Cause/GA*, 554 F.3d at 1356 (citations omitted).  The Order also represents "the benefit [Plaintiff] sought in bringing

11

suit.'" *Hensley*, 461 U.S. at 433 (citation omitted).  Common Cause is therefore a

prevailing party entitled to an award of attorneys' fees.

> C.   **Common Cause Should Be Awarded Attorney's Fees and**
> **Litigation Expenses in Connection with Obtaining the Order.**

When a court determines that the plaintiff is a "prevailing party," the

plaintiff "should ordinarily recover an attorney's fee unless special circumstances

would render such an award unjust." *Hensley*, 461 U.S. at 429 (citation omitted).

"The court would be justified in denying a fee award only 'where the plaintiff['s]

success on a legal claim can be characterized as purely technical or *de minimus*

[sic].'" *Williams*, 2018 WL 2284374, at *4 (quoting *Smalbein ex rel. Estate of*

*Smalbein* v. *City of Daytona Beach*, 353 F.3d 901, 907 n.7 (11th Cir. 2003)).  The

substantial success that Common Cause obtained—a delay in the certification of

the election, an order that the state comply with HAVA's hotline requirements, a

change in the way ballots are counted in Georgia, and a change in Georgia's

laws—cannot fairly be characterized as technical or *de minimis*.

The first step in determining the amount of attorneys' fees that should

be reimbursed is for the Court to determine the "lodestar," *i.e.*, the number of hours

reasonably spent on the litigation, multiplied by a reasonable hourly rate.  *ACLU of*

*Ga.* v. *Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).  The Court must then determine

whether awarding the lodestar is reasonable.  *Bivins* v. *Wrap It Up, Inc.*, 548 F.3d

1348, 1350 (11th Cir. 2008) (per curiam).  Here, the lodestar is $139,480, which is based on a total of 244.4 hours billed by Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss") attorneys, at hourly rates ranging from $250 to $700; and 88.2 hours billed by attorneys from The Brennan Center for Justice ("Brennan Center") attorneys, at hourly rates ranging from $400 to $600.[5]  July 22, 2019 Declaration of Myrna Pérez ("Pérez Decl.") ¶ 14; Berse Decl. ¶ 24.[6]

While there is a "strong presumption" that the lodestar yields a reasonable fee award, *Bivins*, 548 F.3d at 1350, the Court must evaluate the reasonableness of the fee application in the context of the particular case.  *Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010) ("The lodestar method was never intended to be conclusive in all circumstances. . . . [The] presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a

---

[5]  Common Cause's counsel expended a total of well over an additional 1,000 hours litigating this case after the Court entered the Order.  Pérez Decl. ¶ 12; Berse Decl. ¶ 26.  However, Common Cause is not seeking (a) fees after the entry of the Order (other than fees incurred in connection with this Motion), or reimbursement of *any* of their local counsels' fees or expenses.

[6]  Common Cause's total expenses incurred up through the date of the Order are $4,527.59.  These include fees associated with court filings and reporting services, cost of travel to attend the TRO hearing, and expert fees.  Additional details are set forth in the accompanying declarations.  Pérez Decl. ¶¶ 17–18; Berse Decl. ¶¶ 28–29.

reasonable fee."); *Williams*, 2018 WL 2284374, at *11 ("There is no precise rule or

formula the Court must follow in determining what is a reasonable fee award.").

Although not dispositive, the Eleventh Circuit looks to the twelve

factors set forth in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714 (5th

Cir. 1974), to determine whether a fee application a reasonable.[7]  A number of

these factors weigh strongly in favor of finding that Common Cause's fee

application is reasonable.  Of these factors, courts "give special heed to the time

and labor involved, the customary fee, the amount involved and the result obtained,

and the experience, reputation and ability of counsel."  *Saizan* v. *Delta Concrete*

*Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006) (citation omitted).

### (a)   Time and Labor

The time and labor spent on a case is a "necessary ingredient to be

considered," *Johnson*, 488 F.2d at 717, and the "most useful starting point for

---

[7]   The twelve *Johnson* factors are: (1) the time and labor required, (2) the novelty
and difficulty of the questions involved, (3) the skill requisite to perform the
legal service properly, (4) the preclusion of other employment by the attorney
due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed
or contingent, (7) time limitations imposed by the client or the circumstances,
(8) the amount involved and the results obtained, (9) the experience, reputation,
and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature
and length of the professional relationship with the client, and (12) awards in
similar cases. *Id.* at 717–19.

determining the amount of a reasonable fee," *Hensley*, 461 U.S. at 433.  Attorneys are obligated to exercise "billing judgment" in seeking a fee award.  *Id.* at 434 (citation omitted).

While Common Cause is seeking reimbursement of attorneys' fees incurred by a number of attorneys, totaling a significant number of attorney hours, this was necessitated by the complex, emergency, and time-sensitive nature of this matter.  In the context of this case and the deadlines imposed by Georgia law, the number of attorneys involved is reasonable and not inefficient.  Common Cause filed a Complaint, seven briefs and eighteen fact and expert declarations in the span of one week, leading to a 56-page Order granting, in large part, the TRO Motion.  Moreover, as noted above and as demonstrated by the declarations, Common Cause has taken steps to avoid seeking any fees that might be deemed excessive:  (1) Common Cause is *not* seeking reimbursement of the approximately $683,700 in fees incurred after the Order (excluding fees incurred in connection with this Motion); (2) Common Cause's local counsel is *not* seeking reimbursement of any fees; and (3) in the interest of billing judgment, Common Cause's counsel has excluded time that was deemed duplicative, excessive, insufficiently documented, or primarily administrative.  Pérez Decl. ¶ 12; Berse Decl. ¶¶ 20–21.

The time spent by Common Cause's counsel on each stage for which Common Cause is seeking reimbursement is as follows:

| Phase of Case | Firm | Number of Hours |
|---|---|---|
| Preparing complaint | Paul, Weiss | 46.9 |
| | Brennan Center | 24.6 |
| Preparing and filing TRO Motion and accompanying materials | Paul, Weiss | 75.2 |
| | Brennan Center | 14.0 |
| Preparing for and participating in oral argument (including preparing declarations requested by the Court) | Paul, Weiss | 45.8 |
| | Brennan Center | 23.0 |
| Post-Argument Briefing | Paul, Weiss | 76.5 |
| | Brennan Center | 26.6 |

Common Cause's counsel asked David G.H. Brackett, a partner with Atlanta's Bondurant Mixson & Elmore LLP to review the reasonableness of the time Common Cause's counsel spent working on this matter, and the hourly rates claimed by Common Cause's counsel.  Mr. Brackett graduated from Georgetown University Law School in 1996, has been a member of the Georgia bar since 1998, and has been a partner with Bondurant Mixson & Elmore LLP since 2006. Brackett Decl. ¶¶ 3–4.  Mr. Brackett has extensive experience in complex commercial litigation and voting rights matters, as well as experience on both sides of claims for attorneys' fees and expenses.  *Id.* ¶ 4.

Mr. Brackett reviewed the facts and circumstances of the litigation, from the first filing to this motion. *Id.* ¶ 13. As a result of his review, and in light of all of the circumstances, it is Mr. Brackett's opinion that both the tasks performed by Common Cause's counsel, and the number of hours expended to perform them, were necessary and reasonable. *Id.* ¶ 26.

### (b)   Results Obtained

The results obtained by a litigation are an "important factor" in assessing the reasonableness of attorneys' fees. *Hensley*, 461 U.S. at 434. Common Cause's counsel obtained outstanding results for Georgia voters by ensuring that provisional ballots would be counted and that voters had a mechanism to verify that their votes were counted. These results also included obtaining a delay in the certification of the election, an order that the state comply with HAVA's hotline requirements, and a change in the way ballots are counted in Georgia. This and other relief sought by Common Cause was ultimately enshrined into law with the passage of H.B. 316 and H.B. 392, which will benefit all Georgians and instill greater security and confidence in future elections. As a result, the parties signed a stipulation that said these new laws "make further litigation of this matter unnecessary." *See* Joint Stipulation at 3.

### (c)   Novelty and Difficulty of the Questions

This case involved complex state and federal issues, both statutory and constitutional.  Particularly challenging were the technical questions regarding election security and the vulnerability of Georgia's voter registration database, which required expert analysis and extensive investigation by Common Cause's counsel.  This was also the first case challenging Georgia's provisional balloting scheme following the revelation of the election security issues facing Georgia's voter registration database.

### (d)   Experience, Reputation, and Ability of the Attorneys

Common Cause's litigation team was led by the Brennan Center's Myrna Pérez and Max Feldman, along with Paul, Weiss's Robert Atkins and Farrah Berse, all experienced attorneys with years of complex litigation experience, including in the voting rights area.  Pérez Decl. ¶¶ 3–4; Berse Decl. ¶¶ 3–6.  In particular, the Brennan Center is a nonpartisan, nonprofit organization that has litigated voting rights cases for more than two decades, including various challenges to state election laws and practices under the U.S. Constitution and federal voter registration laws.  In addition, the Brennan Center has published numerous nationally recognized reports on election security and election

administration and its staff have testified on these issues before the U.S. Congress and state legislative bodies across the country.  Pérez Decl. ¶¶ 3–6.

Mr. Atkins, who serves as Co-Chair of the Board of the Brennan Center, and Ms. Berse regularly litigate voting rights cases, including *Women Voters of Florida* v. *Detzner*, No. 4:11-cv-00628 (N.D. Fla.), and *League of Women Voters of Florida* v. *Scott*, No. 4:16-cv-00633 (N.D. Fla.).  Berse Decl. ¶¶ 4, 6.  Mr. Atkins and Ms. Berse also have deep experience in complex litigation matters.  *Id.*  The remaining members of the Paul, Weiss team—three Associates and two Law Clerks—have experience in complex commercial disputes, class actions, and internal investigations.  *Id.* ¶¶ 7–12.

Ms. Pérez leads the Brennan Center's Voting Rights and Elections Program, and she has served as counsel in numerous voting rights cases, at both the trial and appellate level. She has also authored several nationally recognized reports and articles on voting rights and election administration, and has testified before Congress and state legislatures on a variety of voting rights issues.  Pérez Decl. ¶ 3.  Mr. Feldman has significant litigation experience, including cases related to voting and elections, as well as complex commercial disputes.  *Id.* ¶ 4.

In forming his opinion, Mr. Brackett noted the skill and experience of Common Cause's counsel, including their expertise in voting rights litigation,

complex litigation, and their track record of collaborating on litigation matters across the country.  Brackett Decl. ¶¶ 11–12.  He opined that these factors enabled them to work quickly on a compressed time schedule to obtain positive results.  *Id.* ¶ 19.

### (e) Time Limitations Imposed by the Circumstances

On November 3, 2018, a lawyer representing Defendant was notified of potential vulnerabilities in Georgia's election system website, including its voter registration server and its public-facing election database.  Compl. ¶¶ 22–23. Defendant publicized these warnings in two press releases on November 4, 2018. *Id.* ¶ 12.  With the vulnerability of Georgia's election systems and provisional balloting scheme becoming more widely known just two days before the election, Common Cause's counsel had to act quickly to file this lawsuit and its TRO Motion to ensure that provisional ballots were properly counted, prior to a rapidly approaching November 13, 2018 deadline (mandated by Georgia law) for counties to certify their election returns—one week after the election.  Within the span of less than a week, Common Cause's counsel investigated the relevant issues, spoke with fact and expert witnesses, filed a complaint, seven briefs, and eighteen declarations, and participated in a hearing on the TRO Motion.

### (f)   The Hourly Rates Sought Are Reasonable.

Courts normally assess a rate's reasonableness by looking to "prevailing market rates" charged by lawyers with comparable capabilities, experience, and reputation "in the relevant community." *Blum* v. *Stenson*, 465 U.S. 886, 895 & n.11 (1984).  The relevant legal community is generally where the case is filed.  *Cullens* v. *Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994).

The following charts show the names, bar admission dates, customary hourly rates, and hourly rates being sought for each lawyer whose time is included in Common Cause's fee application, as well as the number of hours included in this fee application:

| Attorney | Year of Bar Admission | Hours Incl. in Motion | Customary Hourly Rate | Reduced Rate Sought | Total |
|---|---|---|---|---|---|
| Robert Atkins (PW)[8] | 1988 | 3.6 | $1,560 | $700 | $2,520 |
| Myrna Pérez (BC) | 2003 | 34.6 | | $600 | $20,760 |
| Farrah Berse (PW) | 2003 | 43.7 | $1,160 | $600 | $26,220 |
| Maximillian Feldman (BC) | 2014 | 19.9 | | $400 | $7,960 |
| Sean Morales-Doyle (BC) | 2007 | 9.0 | | $550 | $4,950 |

---

[8]   All attorneys included in this fee application are admitted to the New York Bar, unless otherwise indicated.  Next to each attorney's name, is an indication of whether the attorney works for Paul, Weiss ("PW") or the Brennan Center ("BC").  Because the Brennan Center litigates entirely on a pro bono basis, it does not charge a customary hourly rate.

| Attorney | Year of Bar Admission | Hours Incl. in Motion | Customary Hourly Rate | Reduced Rate Sought | Total |
|---|---|---|---|---|---|
| Lawrence Norden (BC) | 1997 | 24.7 | | $600 | $14,820 |
| Makiko Hiromi (PW) | 2012[9] | 58.5 | $920 | $400 | $23,400 |
| William Freeland (PW) | 2016 | 18.1 | $920 | $400 | $7,240 |
| Melina Meneguin Layerenza (PW) | 2017 | 29.7 | $735 | $300 | $8,910 |
| Jessica Fuhrman (PW) | 2019 | 43.2 | $640 | $250 | $10,800 |
| Kyle Sieber (PW) | Not yet admitted | 47.6 | $640 | $250 | $11,900 |
| TOTAL | | 335.7 | | | $139,480 |

Mr. Brackett has extensive practice experience and personal knowledge of the billing and collection rates and practices of his firm, Bondurant Mixson & Elmore LLP, and a number of other Atlanta law firms. Brackett Decl. ¶ 9. In addition to his deep familiarity with the hourly rates of Atlanta law firms, Mr. Brackett has reviewed a number of orders from courts in this District in which attorneys' fees were awarded. *Id.* ¶ 10. For several of these cases, Mr. Brackett knew or had first-hand experience with the work of the attorneys involved. *Id.* Based on his experience and research, it is Mr. Brackett's opinion that the rates

---

[9]   Admitted in Massachusetts. Also admitted in New York (2015).

sought by Common Cause in this fee motion are within the range of reasonable
metro Atlanta market rates. *Id.* ¶ 17.

*          *          *

In sum, the lodestar ($139,480) is a reasonable amount to award given
the circumstances of this case, including the results obtained, the time-sensitive
nature of the matter, the experience of the lawyers involved, and the rates being
sought. *See generally* Brackett Decl.

### D.    Common Cause Should Also Receive Attorneys'
   Fees in Connection with Bringing This Motion.

An attorney may also recover fees for time spent litigating a § 1988
fee application. *See Thompson* v. *Pharmacy Corp. of Am.*, 334 F.3d 1242, 1245
(11th Cir. 2003) ("We have said that an attorney may recover fees for time spent
litigating the award of a section 1988 fee."); *Jackson* v. *State Bd. of Pardons &
Paroles*, 331 F.3d 790, 799 (11th Cir. 2003) ("It is well-settled that fees-on-fees
are permitted under § 1988 even though Congress did not explicitly provide for
fees-on-fees therein."); *Williams*, 2018 WL 2284374, at *14 ("It is well established
that Plaintiffs' counsel may recover for time spent in conjunction with a fee
petition."). "[T]he measure of reasonable hours is determined by the profession's
judgment of the time that may be consciably billed and not the least time in

23

which it might theoretically have been done." *Norman* v. *Hous. Auth. of Montgomery*, 836 F.2d 1292, 1306 (11th Cir. 1988).

With its reply brief, Common Cause's counsel will submit a reasonable estimate of the hours spent litigating this Motion through the date of that brief.

## IV.   CONCLUSION

For the foregoing reasons, Common Cause respectfully requests that the Court award it attorneys' fees in the amount of $139,480.00 and litigation expenses in the amount of $4,527.59 in connection with the TRO Motion and its fees in an amount to be determined later in connection with the Fee Motion.

Respectfully submitted,

SUGARMAN LAW LLP
By:   */s/ F. Skip Sugarman*
        F. Skip Sugarman
            GA Bar No. 690773
        154 Krog St., Suite 190
        Atlanta, GA 30307
        (404) 495-4811
        skip@sugarman-law.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
        Robert A. Atkins
            (*pro hac vice*)
            NY Bar No. 2210771
        Farrah R. Berse
            (*pro hac vice*)
            NY Bar No. 4129706

Makiko Hiromi
 (*pro hac vice*)
 NY Bar No. 5376165
William E. Freeland
 (*pro hac vice*)
 NY Bar No. 5450648
Melina M. Meneguin Layerenza
 (*pro hac vice*)
 NY Bar No. 5559240
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
ratkins@paulweiss.com
fberse@paulweiss.com
mhiromi@paulweiss.com
wfreeland@paulweiss.com
mmeneguin@paulweiss.com

BRENNAN CENTER FOR JUSTICE
AT NEW YORK UNIVERSITY SCHOOL OF LAW
Myrna Pérez
 (*pro hac vice*)
 NY Bar No. 4874095
Wendy R. Weiser
 (*pro hac vice*)
 NY Bar No. 2919595
Maximillian Feldman
 (*pro hac vice*)
 NY Bar No. 5237276
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
perezm@brennan.law.nyu.edu
weiserw@brennan.law.nyu.edu
feldmanm@brennan.law.nyu.edu

*Attorneys for Plaintiff*

25

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF PLAINTIFF COMMON CAUSE GEORGIA'S
SPECIAL MOTION FOR AN AWARD OF ATTORNEYS' FEES was prepared
double-spaced in 14-point Times New Roman pursuant to Local Rule 5.1(C).


_/s/ F. Skip Sugarman_
F. Skip Sugarman
Sugarman Law LLP

26

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2019, I served the within and foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF COMMON CAUSE GEORGIA'S SPECIAL MOTION FOR AN AWARD OF ATTORNEYS' FEES with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to this matter via electronic notification or otherwise.

This 22nd day of July, 2019.

_/s/ F. Skip Sugarman_
F. Skip Sugarman
Sugarman Law LLP