## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| COMMON CAUSE GEORGIA, as an organization, | ) ) ) ) |  |
| *Plaintiff,* | ) ) ) ) ) ) ) |  |
| v. | ) ) | Case No. 18-cv-05102-AT |
| BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, | ) ) ) ) ) |  |
| *Defendant.* | ) |  |

## DECLARATION OF FARRAH R. BERSE

FARRAH R. BERSE declares under penalty of perjury:

**Background**

1.      My name is Farrah R. Berse.  I am over the age of 21 and fully competent to testify in this matter.  I have knowledge of the facts recited in this Declaration, which are based on my personal knowledge and on my review of the records of my law firm, Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss" or the "Firm").  I make this Declaration in support of the motion by

Plaintiff Common Cause Georgia ("Common Cause") for the award of attorneys' fees and expenses in this case.

2.      I am a Counsel at Paul, Weiss, which is co-lead counsel for Common Cause in this lawsuit, along with the Brennan Center for Justice at New York University School of Law (the "Brennan Center").  I have been the Paul, Weiss lawyer with day-to-day responsibility for managing this matter since Paul, Weiss was retained on approximately November 5, 2018, one day before the lawsuit was filed.  Since that time, I have been responsible for, among other things, helping to formulate and direct Common Cause's case strategy, research and analyze legal issues, and draft and edit the complaint and motion for a temporary restraining order and expedited discovery (the "TRO Motion") filed by Common Cause.  I also presented oral argument to the Court in connection with the TRO Motion, along with co-counsel Myrna Pérez of the Brennan Center.  Paul, Weiss Partner Robert Atkins supervised the matter, and we were supported by three associates, two law clerks (graduates of law school who were not yet admitted to the bar during the relevant time period), a visiting lawyer, and other support professionals.

**Biographical Information for the Paul, Weiss Team**

3.      I graduated from New York University School of Law in 2002.  I was admitted to the New York bar in 2003, and I have been a member in good standing

ever since.  I am also a member of the bars of the United States Supreme Court, the

U.S. Courts of Appeals for the Second, Fifth, Ninth, and Eleventh Circuits, and the

bars of the U.S. District Courts for the Eastern and Southern Districts of New

York, and the Northern District of Florida.  After law school, I clerked for Judge

Richard Owen of the United States District Court for the Southern District of New

York for one year.  I joined Paul, Weiss as an Associate in 2003 and was promoted

to Counsel in 2011.

4.      At Paul, Weiss, I specialize in complex litigation and anti-corruption

matters.  I currently serve as a Deputy Chair of the Firm's Anti-Corruption &

FCPA Practice Group.  My pro bono work over the years has focused heavily on

voting rights work.  Among other voting rights work, I was a senior member of the

teams that successfully obtained preliminary injunctions in *League of Women*

*Voters of Florida* v. *Detzner*, No. 4:11-cv-00628 (N.D. Fla.), and *League of*

*Women Voters of Florida* v. *Scott*, No. 4:16-cv-00633 (N.D. Fla).

5.      Robert Atkins received his J.D. degree from New York University

School of Law in 1987.  He was admitted to the New York bar in 1988.  He is also

a member of the bars of the United States Supreme Court, the U.S. Courts of

Appeals for the Second, Third, Fourth, Fifth, Seventh, and Eleventh Circuits, and

the bars of the U.S. District Courts for the Eastern and Southern Districts of New

York, the Northern District of Florida, the Eastern District of Michigan, the District of Colorado, and the District of Nevada. Mr. Atkins joined Paul, Weiss in 1987, and is a Partner and Co-Chair of the Firm's litigation department.

6.      Mr. Atkins regularly litigates voting rights cases and constitutional challenges to voter registration and identification laws, and he serves as a Co-Chair of the Board of the Brennan Center, a nonpartisan and nonprofit law and policy institute. Among other voting rights work, Mr. Atkins served as lead counsel on teams that successfully obtained preliminary injunctions in League of *Women Voters of Florida* v. *Detzner*, No. 4:11-cv-00628 (N.D. Fla.), and *League of Women Voters of Florida* v. *Scott*, No. 4:16-cv-00633 (N.D. Fla). In addition, Mr. Atkins handles litigations in a wide range of matters, including antitrust and product liability class actions, mass tort actions, false advertising lawsuits, and trademark and copyright infringement actions.

7.      As noted earlier, we have been assisted in this case by three Associates, Makiko Hiromi, William Freeland, and Melina Meneguin Layerenza, and two Law Clerks, Jessica Fuhrman and Kyle Sieber (collectively, the "Associates").

8.      Makiko Hiromi received her J.D. degree from Columbia Law School in 2012. She was admitted to the Massachusetts bar in 2012 and the New York bar

in 2015.  She joined Paul, Weiss in 2013, and is now a fourth-year Associate in the

Firm's litigation department.  As an intern at Children's Rights during law school,

Ms. Hiromi worked on *D.G.* v. *Yarbrough*, No. 4:08-cv-00074-GKF-FHM (N.D.

Okla.), a class action against the state of Oklahoma on behalf of children in foster

care in the state.  Since joining Paul, Weiss, she has worked on a variety of matters

including multinational regulatory and internal investigations, and a bankruptcy

court adversary proceeding involving foreign debtors and domestic and foreign

creditors.

9.     William Freeland received his J.D. degree from New York University

School of Law in 2015.  He was admitted to the New York bar in 2016.  He is also

a member of the bar of the U.S. Court of Appeals for the Ninth Circuit, and the

bars of the U.S. District Courts for the Eastern and Southern Districts of New

York.  He joined Paul, Weiss in 2015, and is now a fourth-year Associate in the

Firm's litigation department.   Since joining Paul, Weiss, he has worked on a

variety of matters including complex commercial litigations, multistate class

actions, and internal investigations.

10.     Melina Meneguin Layerenza received her J.D. degree from New York

University School of Law in 2017.  She was admitted to the New York bar in

2017.  She is also a member of the bars of the U.S. Courts of Appeals for the First,

Third, and Ninth Circuits, and the bars of the Eastern and Southern Districts of

New York.  She joined Paul, Weiss in 2017, and is now a second-year Associate in

the Firm's litigation department. Since joining Paul, Weiss, she has worked on a

variety of matters including complex civil litigations, appeals, internal

investigations, and government investigations.  Ms. Meneguin Layerenza's

background in voting rights includes her participation in drafting amicus briefs in

partisan gerrymandering cases before the United States and Pennsylvania Supreme

Courts (*Gill* v. *Whitford*, No. 16-1161 (U.S.), *League of Women Voters of Pa.* v.

*Commonwealth*, No. 159 MM 2017 (Pa.), *Rucho* v. *Common Cause*, No. 18-422

(U.S.), and *Lamone* v. *Benisek*, No. 18-726 (U.S.)), an amicus brief in the 2020

Census case before the United States Supreme Court (*Dep't of Commerce* v. *New

York*, No. 18-966 (U.S.)), and legal strategy memoranda for litigation and voting

rights reform initiatives.  Before law school, Ms. Meneguin Layerenza was a

litigation assistant at Altshuler Berzon, where she worked in a paralegal capacity

on election and voting rights litigation in California and Ohio.

      11.    Jessica Fuhrman received her J.D. degree from New York University

School of Law in 2018 and joined Paul, Weiss later that year.  At the time of the

TRO Motion, Ms. Fuhrman, who was not yet admitted to the bar, was a Law Clerk

at the Firm.  In 2019, Ms. Fuhrman was admitted to the New York bar, and she is

now a first-year Associate in the Firm's litigation department. Since joining Paul, Weiss, she has worked on a variety of matters including complex civil litigations and internal investigations. Ms. Fuhrman's background in voting rights includes her work with the Lawyers' Committee for Civil Rights Under Law in 2018. Ms. Fuhrman was previously the Director of Compliance and Finance Manager of the Democratic Governors Association, and in 2016 she volunteered with the Hillary Clinton presidential campaign to provide voter protection services.

12.   Kyle Sieber received his J.D. degree from Duke University School of Law in 2018. He joined Paul, Weiss in 2018, and is a Law Clerk in the Firm's litigation department. Since joining Paul, Weiss, he has worked on a variety of matters including bankruptcy-related investigations and complex civil litigation matters. Mr. Sieber also worked on an amicus brief in *Department of Commerce* v. *New York*, No. 18-966 (U.S.), the 2020 Census case before the United States Supreme Court.

**Paul, Weiss's Work in Connection with This Matter**

13.   I am familiar with the legal work that Paul, Weiss performed in this case on behalf of Common Cause. Based on my experience in complex litigation and other voting rights matters, I believe that the work that we performed in this case was reasonable and appropriate.

14.     Much of the work that Paul, Weiss did in this case was performed in an extraordinarily short time period between our initial retention on or about November 5, 2018 through the Court's Order on the TRO Motion on November 12, 2018—just one week later.  This work was done under unusual and substantial time pressure given the November 6, 2018 general election and the November 13, 2018 deadline for the certification of those election results.

15.     During that short time period, our work included research for and drafting of the complaint and research for and drafting of the TRO Motion and related submissions.  In total, during that time period, we drafted and filed a Complaint, seven briefs, and eighteen declarations from fact and expert witnesses.[1]

---

[1]     Compl., ECF No. 1; Pl.'s Mem. of Law in Supp. of Mot. for a TRO & Expedited Disc., ECF No. 15-1; Pl.'s First Set of Reqs. for the Produc. of Docs. and Things to Def. Brian Kemp, ECF No. 15-11; Berse Decl., ECF No. 15-12; Morris Decl., ECF No. 25; Geltzer Decl., ECF No. 26; Wood Decl., ECF No. 27; Grant Decl., ECF No. 28; Henderson Decl., ECF No. 29; Flanagan Decl., ECF No. 30; Owens Decl., ECF No. 31; Wallach Decl., ECF No. 35; Barry Decl., ECF No. 36; Pl.'s Mem. of Law re. Standing in Further Supp. of Pl.'s Mot. for a TRO, ECF No. 37; McDonald Decl., ECF No. 46; Suppl. Submission of Pl. Common Cause Georgia, ECF No. 47; Cortes Decl., ECF No. 48; Lamb Decl., ECF No. 49; Morris Decl., ECF No. 50; Pl.'s Opp'n to Def.'s Mot. to Strike the Decls. of Michael McDonald, Edgardo Cortes, and Kevin Morris, ECF No. 53; Pl.'s Suppl. Submission in Supp. of Mot. for a TRO, ECF No. 55; Henderson Suppl. Decl., ECF No. 56; Morris Suppl. Decl., ECF No. 58; Pl.'s Resp. to Def.'s Sunday Suppl. General Submission, ECF No. 59; Pl.'s Suppl. Submission re. Standing,

In addition, we prepared for and attended the hearing in this Court on November 8, 2018.  Following the Order largely granting the TRO, we continued litigating this case, including serving non-party subpoenas on 18 Georgia counties, as well as a number of state agencies.

16.    The assistance of the Associates was necessary to accomplish all of this work on the extraordinarily compressed schedule.  The Associates conducted factual and legal research in advance of drafting the complaint, all of which occurred in one day; they also conducted factual and legal research in connection with the TRO Motion, the related filings, and preparing for the hearing.

17.    Specifically, Ms. Fuhrman and Mr. Sieber conducted factual research regarding reported vulnerabilities in Georgia's election systems and reports of Georgia voters encountering difficulties at the polls; drafted portions of the complaint summarizing those allegations; and conducted legal research in connection with the TRO motion and supplemental briefing on standing.  They also ensured that all documents filed were in compliance with local rules, and coordinated electronic filings with the Court.  Mr. Freeland, Ms. Hiromi, and Ms. Meneguin Layerenza each drafted sections of the complaint and TRO brief.  Ms.

---

ECF No. 60; Richter Decl., ECF No. 60-1; Willingham Decl., ECF No. 60-2.

Hiromi also attended the TRO hearing and assisted in the preparation and filing of

the various declarations for the TRO, and Mr. Freeland and Ms. Meneguin

Layerenza were responsible for the initial draft of the briefing on standing (ECF

No. 37).

18.     Paul, Weiss took on the representation of Plaintiff in this case on a *pro*

*bono* basis, with the understanding that, as is customary in cases of this kind, it

would retain the right to petition this Court for recovery of its fees and costs in the

event that Plaintiff prevailed on its claims, pursuant to 42 U.S.C. § 1988(b), should

it choose to do so.

19.     In accordance with Paul, Weiss's normal business practice, the Paul,

Weiss attorneys and support staff who worked on this case tracked the time that

they worked on this matter to the nearest tenth of an hour.  Following the Firm's

customary practice, the attorneys, law clerks, and other timekeepers working on

this matter entered detailed descriptions of the work they performed on this matter

into the Firm's electronic time-recordkeeping system.

20.     Attached as Exhibit 1 is a chart which details the time spent by Paul,

Weiss timekeepers who worked on this case between November 5 and 11, 2018 for

which the Firm is seeking to recover fees.  This chart is an excerpt from the

electronic timekeeping and billing system used by Paul, Weiss in the regular and

ordinary course of business, edited, in the exercise of billing judgement, to remove privileged information and to remove duplicative time, insufficiently documented time, or time that was deemed excessive or primarily administrative.  It is the regular practice of Paul, Weiss to prepare and keep such records; these records were made and kept by individuals with personal knowledge of the accuracy of the entries; and the entries were made on or about the date reflected in the chart.

21.    This chart does not contain anywhere near all the time charged by all Paul, Weiss personnel who worked on this matter.  I have carefully reviewed the Firm's time entries, and as noted above, removed entries for which I thought reimbursement was not appropriate in the exercise of billing judgement.  For example, the Firm determined that some entries reflected duplicative or inefficient time, or reflected work that was more administrative in nature.  In total, we removed 23.1 hours of time billed by the seven timekeepers described above between November 5 and 11, 2019.

22.    Additionally, Exhibit 1 does not list, and Paul, Weiss does not seek to recover any time for, Fred Snowball, a visiting lawyer from the United Kingdom who assisted significantly in research for this matter, and billed a total of 18 hours between November 5 and 11, 2018, or for the time of our paralegal, Monica Calce,

or other support staff, who collectively billed a total of 35.6 hours between November 5 and 11, 2018.

23.    Other than the edits described above, the time records and work descriptions contained in Exhibit 1 are, to the best of my personal knowledge, a true and accurate reflection of the services performed by Paul, Weiss personnel who worked on this case, the dates on which they rendered those services, and the time that they billed to those services.  I believe that all of the time and services reflected in Exhibit 1 were reasonably necessary to provide Common Cause with effective representation in this case.

24.    For the Court's convenience, the following table lists each of the Paul, Weiss personnel for whom Paul, Weiss is seeking to recover fees.  The table provides the total number of hours that we are seeking to have reimbursed for each attorney, the hourly rate the Firm is seeking for their time, and the total amount that the Firm is seeking for their work.  The table also includes the customary hourly rate for each individual.

**Fee Request**

| Attorney | Year of Bar Admission[2] | Hours Included in Fee Motion | Customary Hourly Rate | Reduced Hourly Rate Sought | Total |
|---|---|---|---|---|---|
| Robert Atkins | 1988 | 3.6 | $1,560 | $700 | $2,520 |
| Farrah Berse | 2003 | 43.7 | $1,160 | $600 | $26,220 |
| Makiko Hiromi | 2012[3] | 58.5 | $920 | $400 | $23,400 |
| William Freeland | 2016 | 18.1 | $920 | $400 | $7,240 |
| Melina Meneguin Layerenza | 2017 | 29.7 | $735 | $300 | $8,910 |
| Jessica Fuhrman | 2019 | 43.2 | $640 | $250 | $10,800 |
| Kyle Sieber | Not yet admitted | 47.6 | $640 | $250 | $11,900 |
| **TOTAL** | | 244.4 | | | $90,990 |

25.    As is evident from the above table, the rates sought by the Paul, Weiss

lawyers are far below the standard rates that the Firm ordinarily charges for the

work of these individuals.  I am informed and I believe that the reduced rates

sought are consistent with reasonable hourly rates for lawyers at major firms in the

---

[2]    All attorneys included in this fee application are admitted to the New York
Bar, unless otherwise indicated.

[3]    Admitted in Massachusetts.  Also admitted in New York (2015).

Atlanta area with the skills and experience comparable to the Paul, Weiss lawyers involved in this case.  Brackett Decl. ¶ 17.

26.    The hours reflected in this chart are also far below the total number of hours shown on the Firm's billing records for the entirety of this matter.  Up through June 18, 2019, the Firm's records show that Robert Atkins billed 3.8 hours to this case; Farrah Berse billed 120.3 hours to this case; Makiko Hiromi billed 181.4 hours to this case; William Freeland billed 78.2 hours to this case; Melina Meneguin Layerenza billed 152.6 hours to this case; Jessica Fuhrman billed 209.9 hours to this case; and Kyle Sieber billed 168.3 hours to this case.  In addition, other lawyers and support staff, in total, billed 372.8 hours to this case.  In total, using the Firm's standard rates, the Firm's records reflect a total value of $941,565.00 for 1287.3 hours in billable time devoted to this case through June 18, 2019—over ten times the $90,990 for which we are seeking an award.  Of that time, 956.2 hours were billed after the TRO order but before our work relating to the application for fees.

27.    For the Court's convenience, we also prepared the below chart summarizing how the time for which we seek recovery was spent:

|  | **Phase of Case** | **Number of Hours** | **Amount Sought** |
|---|---|---|---|
| Phase 1 | Preparing and drafting complaint | 46.9 | $16,775.00 |
| Phase 2 | Preparing and filing TRO Motion | 75.2 | $26,930.00 |
| Phase 3 | Oral Argument (including preparation and filing of declarations requested by the Court) | 45.8 | $21,140.00 |
| Phase 4 | Post-Argument Briefing | 76.5 | $26,145.00 |

28.    Attached as Exhibit 2 is a chart itemizing each of the out-of-pocket

expenses incurred and paid by Paul, Weiss in connection with this litigation for

which the Firm is seeking reimbursement.  This chart is a summary based upon the

electronic records maintained by Paul, Weiss in the ordinary course of business.

Also included in Exhibit 2 are the receipts and other back up information with

respect to the expenses for which the Firm is seeking reimbursement.

29.    The total amount of expenses the Firm is seeking is $3,423.54.  The

Firm is seeking reimbursement for three categories of expenses: (1) fees associated

with filings and court reporting services in this case, which total $892.10; (2) travel expenses associated with travel to Atlanta to participate in a hearing on Plaintiff's motion for a temporary restraining order and expedited discovery, which total $1,306.44; and (3) fees incurred by experts in connection with the TRO motion, which total $1,225.00.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on July 22, 2019, at New York, New York.

_____
Farrah R. Berse